## DAVIS, coroner, *v.* COUNTY OF BIBB.

1. A coroner is, under the Penal Code, § 1112, entitled to demand ten dollars from the county " for summoning an inquest on a dead body and returning an inquisition," in every case where an inquest is required under the Penal Code, § 1255, and where he has not already received more than fifteen hundred dollars as his fees during the year in which the inquest is taken.
2. It is not essential that either the summons in an action brought by a coroner in a justice's court for services rendered in holding inquests, or the account attached to such summons, should show under which particular class of the cases provided for in the Penal Code, § 1255, such inquests were held, nor that they were not held under section 1256 of that code.
3. A coroner who himself summons a jury to hold an inquest is not entitled to any fee for such service.

Submitted May 1, — Decided July 23, 1902.

Complaint.   Before Judge Felton.   Bibb superior court.   November 7, 1901.

*M. G. Bayne* and *R. D. Feagin*, for plaintiff.
*W. G. Smith* and *Hall & Wimberly*, for defendant.

FISH, J.   A. J. Davis brought an action, in a justice's court, against the County of Bibb, on an account for services rendered by him, as coroner, in connection with the holding of certain inquests. The case, at the first term, was by consent appealed to the superior court.   The copy of the account attached to the petition was as follows:

"County of Bibb,          To A. J. Davis, Coroner.
" To services in holding inquests in the following cases:
"Edmund Morris, September 7th, 1900 . . . . . . . . . $10
"Charles Pope, September 11th, 1900 . . . . . . . . . $10
" G. W. Dunlevy, March 8th, 1900 . . . . . . . . . . . $10
" To summoning jury in 49 cases, $1 each, as coroner . . . $49

"Names of cases on paper attached . . . . . . . . . . $79 "

Attached to the account was a statement showing the cases in which plaintiff, as coroner, had summoned juries for inquests, giv-

ing dates, which were from May 31, 1900, to July 28, 1901, inclusive. The summons was amended in the superior court, to the effect that plaintiff had not received $1,500 in fees, as coroner, out of the county treasury of Bibb county during the year 1900, or the year 1901. Plaintiff's case was dismissed upon demurrer, in the superior court, and he excepted.

1. One of the points made by the demurrer was, that there is now no law in this State which makes a county liable directly and in the first instance for fees of coroners for taking inquests. Counsel for. defendant in error contend that while, under the Code of 1882, § 594, and the provisions of all previous codes of the State, the fees of coroners for holding inquests were payable out of the county funds, there is no such provision in the Code of 1895, and the omission by the codifiers to place in the last code such a provision amounts to a repeal or the prior law; that under the law as it now stands, when coroners' fees are payable at all, they are payable: "(a) In the first instance by the person demanding the inquest who may be 'repaid' out of the county treasury, upon an order from the judge of the superior court, as provided in section 1256 of the Penal Code. (b) Out of the fine and forfeiture fund, as provided in section 1080 of the Penal Code." We can not concede the correctness of any of these contentions. It is made the duty of coroners to take inquests. Pol. Code, § 497. Our constitution, article 7, section 6, paragraph .2 (Civil Code, § 5892), gives the General Assembly power to delegate to any. county the right to levy a tax to pay coroners, and section 404 of the Political Code provides that a county tax shall be assessed, "4. To pay coroners all fees that may be due them for holding inquests." Section 1112 of the Penal Code declares that coroners' fees shall be as follows: "For summoning an inquest on a dead body and returning an inquisition, $10.00. . . No coroner shall receive out of the county treasury of any county more than fifteen hundred dollars per annum, either as fees for holding inquests or for burying dead bodies." We think that the section last quoted clearly indicates that the coroner shall receive his fees out of the county treasury, and that the codifiers must have been of the opinion that the section manifested this intention, without an express provision to that effect, such as was contained in the prior codes. The legislature, under constitutional authority, has delegated to the counties the right to

levy a tax for the payment of the fees due coroners, has required them to levy such tax, and has fixed the amount of such fees for which any county shall be liable in any one year. While a county is not liable to suit for any cause of action unless made so by statute, we think that when the statute provides that a coroner shall not receive, as fees, out of the county treasury of any county more than a specified sum per annum and provides what his fees shall be, it is clearly manifest that he shall receive out of the county treasury his fees up to that amount, and that if the county should refuse to pay them, it is liable to an action therefor. As to the other contentions of counsel for defendant in error, section 1256 of the Penal Code. provides: "No inquest shall be held over any dead body, when the cause of the death was violence, or accident, or act of God, in the presence of witnesses, unless some person makes affidavit of facts raising a suspicion of foul play, when an inquest shall be had, but at the expense of the party making the affidavit. Upon such inquest, if it should appear that the death was caused by violence and foul play, and the person guilty of the act is arrested, the person paying the cost of the inquest shall be repaid by the county treasurer upon an order from the judge. of the superior court of the county." Section 1080 of the same code is as follows: "If any person is convicted of murder or manslaughter, in a case where an inquest has been held over the body of the person for slaying whom he is convicted, the costs of the inquest make a part of the costs of conviction, and must be so charged." It will be readily seen that the provisions of these sections only apply to the fees of coroners under the circumstances therein specified, and are mere exceptions to the general rule as to how such fees shall be paid.

2. Section 1255 of the Penal Code provides: "Coroners shall take inquest over dead bodies in their respective counties as follows: 1st. Of all violent, sudden, or casual deaths, when there are no eye-witnesses to the killing or cause of the death. 2d. Of all sudden deaths in prison without an attending physician. 3d. Of all dead bodies found, whether of persons known or unknown, when it is apparent from the body that violence caused the death, or when the person died or disappeared under suspicious circumstances. 4th. Whenever ordered by a court having criminal jurisdiction;" etc. The demurrer raised the point that the summons and statement of account thereto attached failed to show that the

inquests for which the plaintiff claimed fees fell within any of the cases provided for in this section, and that therefore the suit was not properly brought. If the suit had been instituted in any court other than a justice's court, this point might have been good, but, as is well known, the same degree of particularity in pleading is not required in a justice's court as in the higher courts. In a suit upon an account in a justice's court, it is necessary to attach to the summons a copy of the account sued on. Civil Code, § 4116. This rule was complied with in the present case, and though the circumstances under which the inquests were taken were not particularly set out in the account, yet we think the statement of the account was sufficiently full, under the practice in justices' courts. Nor do we think that it was necessary that the summons, or the account thereto attached, should have shown that the inquests were not held under section 1256 of the Penal Code, which we have hereinbefore quoted.

3. The suit was, in part, for $49, for the plaintiff's services as coroner in summoning juries in forty-nine inquests he had held. As to so much of the action as sought a recovery for these services the demurrer was properly sustained. The provision of section 1112 of the Penal Code that, "For summoning an inquest on a dead body and returning an inquisition," the coroner shall be entitled to a fee of $10, means that $10 shall be his entire compensation for all services rendered by him in and about an inquest. "Summoning an inquest," as here used, means summoning a jury. "The term 'inquest' is sometimes used to signify the jury itself before whom the question is brought." Brown's Law Dic. So the grand jury is often called the "grand inquest." When a constable summons a jury of inquest, he is entitled to a fee of one dollar (Penal Code, § 1111), but there is no authority, under our statutes, for a coroner to charge the county a separate fee for such service. Counsel for plaintiff in error contend that the language in section 1112 of the Penal Code, that, "when performing the duties of a sheriff [the coroner's] fees are the same as the sheriff," entitles a coroner to compensation for summoning a jury of inquest. We do not think so. This language clearly refers to such duties of a sheriff as a coroner may perform when the sheriff is disqualified or for any reason can not act. There is no law which makes it one of the duties of a sheriff to summon a jury of inquest, and the lan-

guage above quoted can not be construed to authorize a coroner to charge for such services.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*