8379.   ATLANTIC COAST LINE RAILROAD CO. v. DRAKE.

1. In a suit on account it is not necessary that the plaintiff's proceeding show whether it is based upon an express or upon an implied contract.

2. While the placing of cross-ties on the right of way of a railway company for its acceptance and use, and their subsequent removal by some one, might create a presumption that the ties had been accepted and used by the company, and a corresponding obligation on its part to pay therefor, yet, where the company duly inspects the ties, expressly rejects them as unsuited to its needs, and so notifies the person offering them for sale, the bare fact that the ties were subsequently removed by some one, it not appearing when, how, or by whom, does not create any such presumption against the company.

3. Where, after a railroad company has inspected and rejected a lot of cross-ties offered to it at a point on its right of way, they are removed by some one, and similar ties are thereafter discovered at other places along the right of way, apparently so placed for use by the company, but the ties so discovered are in no way identified as a part of the rejected lot, and it does not even appear whether they were so placed before or after the unexplained removal of the rejected ties, the discovery of such similar ties is without evidentiary value as a circumstance to connect the company with the removal of the particular ties previously offered to and rejected by it.

4. If material to the issue between the parties, the uncontradicted testimony of an unimpeached witness can not in any case be arbitrarily disregarded by any tribunal, whether judge or jury, whose duty it is to consider the evidence and decide the issue in accordance therewith. Where, therefore, as a result of proved facts, only a prima facie presumption arises that certain additional facts exist in favor of one party, and positive, unequivocal, and uncontradicted testimony is introduced in behalf of the other party, emphatically denying the facts thus presumed, such presumption is legally rebutted and can not prevail against such testimony.

5. In view of the rulings announced in the foregoing headnotes, the evidence in this case did not authorize any verdict in favor of the plain-

6

tiff, and the trial judge erred in overruling the defendant's motion for a new trial.

DECIDED OCTOBER 31, 1917.

Appeal; from Decatur superior court—Judge Cox. December 18, 1916.

*Pope & Bennet, Hartsfield & Conger,* for plaintiff in error.

*M. E. O'Neal, T. S. Hawes,* contra.

LUKE, J.   This case arose as a suit on account in a justice's court, the articles alleged to have been sold by the plaintiff, Drake, to the railroad company being two lots of cross-ties, one on December 15, 1912, the other on March 20, 1914, at prices therein stated. The defendant denied that it was indebted to the plaintiff in any amount or manner.   Upon the trial in the justice's court the magistrate rendered judgment in favor of the plaintiff, for the full amount claimed.   The defendant thereupon appealed to a jury in the superior court, where upon the trial a verdict was returned in favor of the plaintiff for the same amount.   The defendant's motion for a new trial was thereafter overruled, and it brings a writ of error to this court.

The evidence in the case is very brief.   J. W. Drake, the plaintiff, testified that he was in the tie business, and had a camp at Donalsonville, on or near the company's right of way; that the company's inspector, Giles, inspected the ties, accepted some of them (about which there is no controversy), and rejected 482 of them; "that he was not present except for a few minutes on one occasion in December when the tie train was loading these ties; that the last time he saw the cull ties they were scattered among a large pile of good ties, and that about three or four days after the tie train had been there to remove the ties . . . he found the cull ties to have been removed by some one.   He later walked down the Coast Line Road between Donalsonville and Iron City and discovered in one place one cull tie, in another place three cull ties, and in another place five cull ties, in a distance of a little more than a mile.   He did not know where these cull ties came from. The cull ties were worth 20 cents each." E. A. Drake testified, "that there was a large quantity of cull ties among the good ones, and that they, later, after the train had been there, had been removed by some one, he did not know how or by whom."   One Alday testified that he was with the plaintiff on the occasion of the walk down the railroad, and "that he saw eight or ten cull ties in various

places along the road." There was no other evidence of any character for the plaintiff. The company's roadmaster, Giles, testified, as a witness for the defendant, that no employee of the company was authorized to move any ties from the Drake camp without an order from him; that he had not ordered the removal of any of the cull ties in question, but had ordered that they be left at the camp. Another witness, Huff, testified, "that he was in charge of the work train that moved the ties from the Drake camp in January; that he personally superintended the loading; that he knew no cull ties were loaded upon his train; and that his was the only tie train which moved any ties from that camp." Two other employees of the company testified that they had assisted in the removal of the ties from the Drake camp in January and February, and that no cull ties had been removed on those occasions. The company's section foreman, Pace, whose section includes the towns of Donalsonville and Iron City, testified "that he had specific instructions not to use any cull ties, and that he did not use, or allow to be used, any cull ties in his division, and that none were brought and distributed there so far as he knew, and that he had paid special attention to this matter. Cull ties were used in side track at Iron City. I saw some cull ties in a pile on the main line in my section mixed with good ties."

1. The plaintiff's proceeding in the justice's court follows the forms usual in suits on account. It contains nothing to indicate that it is based upon an implied, rather than an express, contract. The plaintiff's evidence, however, seeks only to establish an implied contract, a right to recover on a quantum valebant. But this apparent variance does not in fact constitute a legal or material variance between the allegations and the proof. Civil Code (1910), §§ 5513, 5572, 5573. This is especially true as applied to pleadings in a justice's court, because there the same degree of particularity is not required as in those courts where suits are commenced by petition. *Davis* v. *Bibb County*, 116 *Ga.* 23 (2) (42 S. E. 403). Even in the superior court, where, in a petition, the plaintiff is required to set forth his cause of action plainly, fully, and distinctly (Civil Code, § 5538), and where an allegation of a promise to pay might with a greater degree of reason be said to import an express promise, the allegations may be established by

proof of an implied promise. *Jackson* v. *Buice,* 132 *Ga.* 51 (63 S. E. 823).

2. The controlling question in this case is whether or not the evidence, as a whole, authorizes the conculsion that the defendant company accepted the ties in question and thereby impliedly promised to pay the reasonable value thereof. Civil Code (1910), § 5513. To put it more pointedly still, the controlling question is: Did the company remove the ties? To prove that it did, the plaintiff relies wholly upon circumstantial evidence. In *Central of Georgia Railway Co.* v. *Pitts,* 16 *Ga. App.* 314 (85 S. E. 285), which is a somewhat similar case, this court held: . "Though the placing of cross-ties at a switch on the line of a railway company for its acceptance and use, and their subsequent removal by some one, might create a presumption that the ties had been accepted and used by the company, and a corresponding obligation on its part to pay therefor, yet where positive, unequivocal, and uncontradicted testimony denies that the ties were ever inspected or received by the company, this presumption is legally rebutted." In that case it does not appear that there was any inspection of the ties by the railway company or any rejection of the seller's offer, and therein lies the chief distinction between that case and this. Silence, under the circumstances there indicated, together with the subsequent removal of the ties *by some. one,* is what raised the prima facie presumption that the railway company had accepted, removed, and used the ties. Such a presumption, arising from such proved facts, does no violence to any one, imputes no wrongful act or intention to any officer or agent of the railway company. But in the case at bar the company was not silent. On the contrary, it caused the ties offered by Drake to be duly inspected, expressly rejected them as unsuited to its needs, and so notified him, leaving the ties where it had found them, and they were thereafter removed by some one. When, how, or by whom they were removed does not appear; nor does it appear that the company's requirements underwent any change. These facts do not create any such presumption. Standing alone, they do not create any presumption in favor of the plaintiff or against the defendant. In other words, since there is no evidence to show when, how, or by whom the ties were removed, and nothing to show any reconsideration by the company of the plaintiff's offer, the bare

fact of the removal of the ties by some one is insufficient to raise the presumption either that the company so changed its mind or its requirements as to accept the ties after they had been rejected, or that its agents wrongfully took and carried them away. On the contrary, the company's agents are presumed to be innocent of any such wrongful taking until their guilt is proved beyond a reasonable doubt (*Sanders* v. *Johnson*, 29 *Ga.* 528), and the state of things which rendered the ties unacceptable to the company at the time it rejected them is presumed to continue until a change or some adequate cause of change is made to appear. *Anderson* v. *Blythe*, 54 *Ga.* 508; *Coleman & Burden Co.* v. *Rice*, 105 *Ga.* 164 (31 S. E. 424).

3. The plaintiff contends, however, that, coupled with the fact of the unexplained removal of his ties by some one, is the further fact that similar ties were susequently discovered along the company's right of way, and that the two circumstances together create the presumption that the company accepted and removed the particular ties which it had theretofore rejected. But the ties that were so discovered are not identified as any part of the lot in question, nor does it even appear whether they were so placed before or after the unexplained removal of the rejected ties. This further circumstance is therefore wholly without evidentiary value. As held by this court in the case of *Ga. Ry. & El. Co.* v. *Harris*, 1 *Ga. App.* 714 (57 S. E. 1076), "Where a plaintiff in a civil case supports his action solely by circumstantial evidence, before he is authorized to have a verdict in his favor the testimony must be such as to reasonably establish the theory relied upon, and to preponderate to that theory rather than to any other reasonable hypothesis." Again, under the decision of the Supreme Court in the case of *Central Railroad &c. Co.* v. *Dottenheim*, 92 *Ga.* 425 (17 S. E. 662), it is to be presumed that the trial court would have excluded the testimony as to the discovery of similar ties along the company's right of way had a proper and timely motion to that end been made. Though admitted without objection, such evidence is without probative value, because it is not sufficiently connected with the particular matter in controversy here.

4. The fourth headnote needs no elaboration. It is merely the application of a well settled rule of law to the facts of this case, or rather to what would have been the facts of this case had the

plaintiff carried the burden of establishing a prima facie case in his favor; which he may do on the next trial. In the case of *Central of Ga. Ry. Co.* v. *Pitts,* supra, the principle is applied to a cause similar to that involved in this case. The same principle has been repeatedly applied to actions against railway companies for injuries done by the running of their locomotives, etc., where, by statute, proof of the injury raises against the company a prima facie presumption of negligence; but it has been invariably held that, where the plaintiff relies on such presumption alone, and there is positive, unequivocal, and uncontradicted evidence affirmatively showing that the company was without fault, such presumption is legally rebutted. See Park's Ann. Code, § 2780, and citations following catchword "Rebutted." . Again, the possessor of property, whether realty or personalty, is prima facie presumed to be the owner thereof; but this presumption may always be rebutted by positive evidence showing a better title in the other party, and the presumption alone will not withstand such evidence. Park's Ann. Code, §§ 4472, 4482, and citations. Another familiar application of the same rule is to be found in claim cases, where, by statute, the possession of the property at the time of the levy creates a prima facie presumption that such possessor, whether claimant or defendant in fi. fa., is the true owner thereof (Civil Code (1910), § 5170); yet such presumption, standing alone, can never prevail over positive, unequivocal, and uncontradicted evidence of title in the other alleged owner. *Green* v. *Wade-Chambers Grocery Co.,* 19 *Ga. App.* 454 (91 S. E. 789). Illustrations of the application of this rule could be multiplied until the entire category of prima facie presumptions is exhausted, but further illustrations are wholly unnecessary.

5. The plaintiff was not, under any view of the evidence, entitled to a verdict in his favor. The trial court, therefore, erred in overruling the defendant's motion for a new trial.

*Judgment reversed. Wade, C. J., and Jenkins, J., concur.*