## 32342.  RIVERS *v.* FARRER.

DECIDED JUNE 15, 1949.

446

*M. C. Barwick*, for plaintiff in error.

*N. J. Smith*, contra.

MacINTYRE, P. J. The parties entered into the following agreement to arbitrate their differences: "L. F. Farrer and E. F. Rivers have this day agreed to arbitrate a controversy between themselves and each to abide by such award as the duly appointed arbitrators may make after hearing the evidence on both sides in said case, and inspecting the construction done on said job, out of the presence of or without interference from either party to said controversy, or their agents. The contentions of the parties and questions at issue are, in substance, as follows: 1. L. H. Farrer contends and it is admitted by E. F. Rivers, that he contracted with E. F. Rivers to build a dam including earth, brick, and carpenter work for the sum of $975, the same to be reasonably suited for the purposes for which it was constructed and also to build such as nearly as possible to suit the wishes of Mr. E. F. Rivers. No written contract was made up and signed between the parties before this work was begun, nor were any specifications drawn up. He [Farrer] contends that he has complied with said contract up until the time that he was stopped by the said E. F. Rivers, and that the said E. F. Rivers was at the job where said construction was going on during same almost every day and gave his approval of same as same was constructed. He contends that the value of his work up until the time the construction was stopped on said dam at the instance of Mr. E. F. Rivers was the sum of $820. He states that he has been paid thereon, or for his benefit, the sum of $415, not including a check to one Henry Martin, a subcontractor, for $100, payment on which was stopped. He claims that, excluding the $100 check to Martin, he is now due for his

services the sum of $305. It is agreed between the parties that the portion of the work done and to be done by J. C. Williams Jr., the subcontractor for the earth-moving portion of the project, has been eliminated from this controversy, since Mr. E. F. Rivers has made a separate contract with him to finish the earthen part of the dam. 2. On the other hand, Mr. E. F. Rivers contends that the work being done on the dam was not done in a substantial manner and that it did not comply with the contract, in that it was not suited for the purposes for which it was constructed. He contends that he has never stopped the work on the project, but that he has settled in full with L. H. Farrer for any connection he had with the contract for the sum of $100, which has been paid. He contends that at the time that he paid L. H. Farrer the sum of $100 in full settlement, it was with the understanding that the check given to Martin for $100 on the work would be turned down. He contends that, since this check has passed into the hands of an innocent third party, he is bound to pay said check and should be reimbursed by L. H. Farrer in the sum of $100, to which Farrer is not entitled on this contract. He contends that, if he is reimbursed that $100, the entire contract has been satisfied by the subsequent agreement made with Farrer. But aside from this subsequent agreement, he contends that the work is worthless to him under the original contracts. The questions for determination by the arbitrators are these: 1. Has L. H. Farrer been settled with in full for the work done in connection with this contract? 2. If he has not been settled with in full, what is the amount due him now under this contract? 3. Should Rivers be reimbursed by Farrer for the One Hundred Dollars?"

Included as an exhibit in the bill of exceptions was the following summary of the evidence adduced before the arbitrators: "Rivers had contracted with Farrer to build a dam, brick work, and the carpenter work in a pond which he was constructing for Rivers, that the same was to be completed for a contract price of $975, the same to be constructed in a substantial manner and to meet the wishes of E. F. Rivers. As the work proceeded, Rivers constantly made the complaint of the manner in which the work was being done, and on June 1, 1948, he went to Farrer and asked him what he would take and get out of the contract

entirely. Farrer replied that he would get out of the contract for the sum of $100. Rivers gave Farrer a check in final settlement on that date and Farrer was to go no further with the contract. After Farrer had taken the contract for $975, he subcontracted the brick work and the carpenter work to one Henry Martin for the sum of $500. He subcontracted the dirt-filling part of the contract to one J. C. Williams Jr. for the sum of $200. The latter contract was taken over by Rivers, and Williams finished it for Rivers and was paid for the same by Rivers. At the time Rivers made his settlement with Farrer on June 1, 1948, he had previously paid Farrer the sum of $415, not including a check to Henry Martin issued by Rivers. When Rivers gave the check to Farrer for $100 in full settlement of his contract and all claims to date, and to stop the contract at that point, he stated to Farrer that on account of the poor work Martin had done on the brick work, he had stopped payment on the abovementioned check given to Henry Martin, and that he was not going to pay same. There was some discrepancy in the testimony as to whether this check for $100 was not going to be paid when the settlement was made. But it is undisputed that Farrer accepted the check marked 'in full settlement' with the understanding on his part that Rivers had turned down the check to Martin. Rivers stated that as a part of the settlement . . the $100 check was to be turned down, and that Farrer, with this knowledge, accepted the $100 check to him in full settlement and made no effort to undo the settlement. This check to Martin (canceled between the parties) was later paid by Rivers, because it had gone into the hands of an innocent purchaser for value and was not taken care of by Farrer. It is undisputed that Martin left the job at that time of the settlement between Rivers and Farrer and has never been back to finish the job. It is also undisputed that Rivers contracted with J. C. Williams Jr. to finish the remainder of the earthen part of the dam."

It was admitted in the articles submitted for arbitration that Rivers employed Farrer to erect a certain dam for a contract price of $975. Farrer contended that Rivers prevented his completion of the dam, and that his services up to the time Rivers caused the work to be discontinued were of the value of $820; that he had received from Rivers a payment in the amount of

$415 on the work, leaving a balance due him of $305. Rivers contended that the work completed was of no value to him, and that he had entered into an agreement (accord and satisfaction) with Farrer to pay him $100 to "get out of the contract," and that it was understood between Rivers and Farrer that a check which had been given to the subcontractor Martin would not be paid, but that payment on the check would be stopped. It is recited in the brief of evidence, to which no exception was taken, that "it is undisputed that Farrer accepted [Rivers'] check marked 'in full settlement' with the understanding on his part that Rivers had turned down the check to Martin." Under such a state of the evidence an affirmative answer should have been given to the question, "Has L. H. Farrer been settled with in full for the work done in connection with this contract?" The evidence "being wholly uncontradicted, the [arbitrators] would have no right to disregard it." *McNamara* v. *Georgia Cotton Co.*, 10 *Ga. App.* 669 (73 S. E. 1092); *Atlantic Coast Line R. Co.* v. *Drake*, 21 *Ga. App.* 81 (4) (94 S. E. 65). As jurors, arbitrators are not to be governed by caprice, but by the evidence. The award of the arbitrators is not supported by the evidence, and the court erred in sustaining the demurrer to the exceptions to the award and in making the award of the arbitrators the judgment of the court.

*Judgment reversed.* *Gardner, and Townsend, JJ., concur.*