### 14891.   DABNEY *v.* BRIGMAN MOTORS COMPANY.

"A surety who has paid the debt of his principal is subrogated, both at law and in equity, to all the rights of the creditor, and, in a controversy with other creditors, ranks in dignity the same as the creditor whose claim he paid.   He is entitled, also, to be substituted in place of the creditor as to all securities held by him for the payment of the debt."   Civil Code (1910), §§ 3567, 3568.   The fact that when a note was paid by the surety, and it, with the mortgage securing it, was surrendered by the creditor to him, the word "Paid," dated and signed, was written across the face of the note and the mortgage, amounts to nothing more than a receipt for the money by the creditor to the surety, and does

not operate legally to extinguish the rights of the surety against the principal, or against other creditors of the principal contending for the mortgaged property, unless it be made to appear that it was the intent that such payment by the surety should operate to satisfy and extinguish the instruments; especially would this be true where it does not appear that the contending creditor had knowledge of such entry.

DECIDED SEPTEMBER 19, 1924.

Certiorari; from Fulton superior court—Judge Humphries. June 5, 1923.

W. M. Dabney purchased an automobile from Brigman Motors Company for $900. Of the purchase price he borrowed $700 from a loan company on a note, signed by himself and by J. T. Dabney as surety, which was secured by a mortgage on the car, executed by him on the same date and recorded. The seller of the car had actual knowledge as to how the purchase was financed. The amount called for by the loan note and the mortgage was subsequently paid by the surety to the loan company, and both instruments were marked "Paid," with an entry of the date of payment, by the attorney for the loan company, and by it surrendered to the surety. About a year thereafter, the owner of the car, W. M. Dabney, carried it to the Brigman Motors Company for repairs, and, upon the bill therefor not being paid, it was advertised and sold by the latter company under a mechanic's lien, and by it bought in at the sale. After the judicial sale J. T. Dabney, the surety on the note referred to, claiming the right of subrogation, foreclosed the mortgage made to secure the loan note. To this foreclosure the Brigman Motors Company, as purchaser at the judicial sale under its mechanic's lien foreclosure, interposed a claim. The judge of the municipal court of Atlanta held in favor of J. T. Dabney, under his right of subrogation. On certiorari the judge of the superior court reversed this judgment, and in his order sustaining the certiorari said: "The plaintiff was not a party to the mortgage. Neither did he acquire legal title to the same. His suit, filed in his own name, is based upon an alleged equitable right, by way of subrogation. The mortgage note was paid and marked paid without any effort to obtain a transfer of the same. It was only after the property had been sold under judicial process and bought by the claimant that the claimant (surety) undertook in his own name, after the mortgage had been paid and marked satisfied, to foreclose it."

*Lowndes Calhoun,* for plaintiff.

*A. E. Wilson, Neal G. Goss,* for defendant.

JENKINS, P. J. (After stating the foregoing facts.) "A surety who has paid the debt of his principal is subrogated, both at law and in equity, to all the rights of the creditor, and, in a controversy with other creditors, ranks in dignity the same as the creditor whose claim he paid." Civil Code (1910), § 3567. "He is entitled, also, to be substituted in place of the creditor as to all securities held by him for the payment of the debt." Civil Code, § 3568. Since the adoption of the code, not only is he entitled to maintain his suit in equity against his principal upon the implied promise of indemnification, but by virtue of the statute he has become legally subrogated to the rights of the creditor so as to permit him to sue on the original indebtedness. The rule in equity was in effect the same. Even before the adoption of the code, it was "the doctrine of the civil law, and was the doctrine of the English courts of chancery in Lord Hardwick's day and at the time of the Revolution, that the surety is entitled, upon payment of the debt of his principal, not only to have full benefit and control of all securities which the creditor has taken to assure his debt, but also to be substituted, as to the very debt itself, to the creditor and to have it assigned to him." *Train* v. *Emerson,* 141 *Ga.* 95, 96 (80 S. E. 554, 49 L. R. A. (N. S.) 950). While the surety, upon his payment of the principal's obligation, is entitled to have the evidence of indebtedness assigned to himself (see also 25 R. C. L., p. 1387, § 69), it was held, even before the adoption of the code, that "it is quite immaterial whether there is in point of fact an assignment of the debt or not; for if upon equitable principles the surety is entitled to it, chancery will consider that as done which ought to have been done." *Lumpkin* v. *Mills,* 4 *Ga.* 343, 348. Since the adoption of the code it is in this State settled that, without the necessity of resorting to equity, "he who has a legal right of present substitution in place of a creditor is already substituted; he need not appeal to any court to ascertain and declare whether the facts of his case entitle him to substitution, nor report to any court that he elects or has elected to be substituted. . . The code clothes the surety with the legal title to the security which he pays off. . . By legal subrogation the paper becomes his property, and the creditor has no right to withhold it from

his possession. It is equally certain that he could maintain an action upon it against his principal for reimbursement." *Hull* v. *Myers,* 90 *Ga.* 674, 682, 683 (16 S. E. 653). See also *Anderson* v. *Armistead,* 18 *Ga. App.* 387, 388, 390 (89 S. E. 525) ; *Travis* v. *Sams,* 23 *Ga. App.* 713 (1), 714 (99 S. E. 239). Thus, where a note is signed by a principal and a surety, secured by a mortgage on personalty executed by the principal in favor of the payee, and both obligations are paid by the surety and surrendered to him, he is subrogated at law as well as in equity to the rights of the payee creditor, is "substituted in place of the creditor as to" the mortgage (Civil Code, §§ 3567, 3568), and is entitled to control and foreclose it without the necessity of obtaining a formal assignment from the payee creditor, in order to indemnify himself to the amount thus expended. Since, "in a controversy with other creditors," the surety, as the subrogated and substituted owner of the mortgage, "ranks in dignity the same as the creditor whose claim he paid," the mortgage lien will take priority over the claim of one subsequently acquiring title to the mortgaged property by virtue of a purchase made at a sale under a foreclosure by him of a mechanic's lien, where it appears that the claimant, at the time of making the repairs and purchasing the property, and from the time of the execution of the mortgage, had *actual knowledge* of its existence and of the contract of suretyship.

The fact that the note and the mortgage were simply marked "Paid," dated and signed, at the time of payment by and surrender to the surety, without indicating that payment was being made by the surety, merely for the purpose of subrogation, would not affect their discharge or cancellation, so far as the right of the surety extends to enforce them against the principal or against other creditors of the principal contending for the mortgaged property, in the absence of any proof that the parties actually intended to cancel and discharge the instruments in toto; especially would this be true where it is not made to appear that the contending creditor had knowledge of such entry. It does not appear whether the mortgage had ever been canceled of record, in which event the rule and priorities might perhaps be different, or the aid of equity required to restore it to vitality. See *Wilkins* v. *Gibson,* 113 *Ga.* 31 (1, 2), 45, 46, 50 (38 S. E. 374, 84 Am. St. R. 204). *Judgment reversed. Stephens and Bell, JJ., concur.*