## 70612. GINSBERG v. TERMOTTO.
### (333 SE2d 120)

BANKE, Chief Judge.

The appellee, Sandy S. Termotto, filed this action against the appellant, Linda G. Ginsberg, to obtain reimbursement for certain utility payments he had allegedly made for her benefit over a period of several years. A jury awarded him $6,000 in "special damages," $3,000 in "general damages," and $3,000 in attorney fees. This appeal followed.

Most of the salient facts are undisputed. The appellant's late husband owned two adjacent apartment buildings in Savannah, Georgia, which shared a common hot water system. In 1976, he contracted to sell one of these buildings to the appellee but died prior to the

closing. The closing nevertheless proceeded, with the appellant being substituted as seller in place of her husband.

At some point prior to the closing, it was discovered that the building which was to be retained by the appellant contained the hot water supply system for both buildings. In order to consummate the sale, the real estate agents and closing attorneys representing the two parties negotiated an agreement giving the appellee a 25-year lease on the boiler room and conveying to him the fixtures located therein. Because the two buildings shared a common water meter, an agreement was also reached whereby the appellee was to pay approximately ⅔ of the water and sewerage bills for the two buildings, as well as ⅔ of the refuse collection bills, and the appellant was to pay approximately ⅓ of such expenses. Although the appellant was not personally involved in the negotiation of these agreements, she does not deny that the attorneys and real estate agents representing her at the time were authorized to enter into the agreements on her behalf. The two buildings were managed by the same realty company for a substantial period of time following the sale, and that company deducted the expenses for water, sewerage, and refuse from the parties' rental proceeds in accordance with the ⅔-⅓ arrangement.

Unbeknownst to the parties or any of their agents, the two buildings also shared a common gas meter. No mention of the gas system was made during the closing, nor was any agreement made by the parties to split the gas bills, which were placed in the appellee's name. Consequently, he alone paid for all the gas utilized by the tenants of both buildings until 1980, when for reasons appearing below, the appellant installed her own separate gas and hot water system.

Following her husband's death, the appellant, who was employed on the staff of *Dental Magazine*, published two articles in that magazine concerning some of the experiences she had undergone in connection with her husband's death. Feeling that these articles presented the Savannah dental community in an unfavorable light, the appellee, who is a member of that community, called the publisher of the magazine to complain. Soon thereafter, in July of 1979, the appellant instructed the realty company which managed the two properties to stop deducting her ⅓ share of the water, sewerage, and refuse collection bills from the gross rentals collected from the tenants in her building. The situation with regard to the gas meter was discovered soon thereafter. The appellee subsequently turned off the water to the appellant's apartments on several occasions, demanded that she pay for all utilities furnished to her building, and ultimately disconnected her building from the gas and hot water system altogether, with the result that the appellant was forced to install a separate system. *Held*:

1. The appellee was not entitled to restitutionary damages for

unjust enrichment based on his payment of the bill for gas furnished to the appellant's building. The evidence discloses without dispute that both she and the appellee were unaware that such a benefit was being conferred on her, and the law implies a promise to pay for a benefit conferred by one party upon another only where the benefit is *accepted* by the latter. See OCGA § 9-2-7; *First Nat. Bank & Trust Co. of Vidalia v. McNatt*, 141 Ga. App. 6, 8 (232 SE2d 356) (1977). "Where money is paid on the debt of another by a person who is under no legal or moral obligation to pay the debt, and he does not do so at the instance, request, or consent of the debtor, and the debtor does not ratify his act as one done in his behalf, or does not otherwise become liable therefor, it is a voluntary payment, and the person making the payment cannot recover from the debtor." *Hartley v. Hartley*, 50 Ga. App. 848 (1) (179 SE 245) (1934); *Jennings v. Stewart*, 106 Ga. App. 689 (2) (127 SE2d 842) (1962). Accord *Beavers v. Weatherly*, 250 Ga. 546, 548 (299 SE2d 730) (1983); *Bryant v. Guaranty Life Ins. Co.*, 40 Ga. App. 573, 579 (150 SE 596) (1929). Compare *Clay v. Littlefield*, 144 Ga. App. 88 (1) (240 SE2d 254) (1977).

2. With regard to the remaining utility expenses, we note that because the appellant's obligation to pay was undisputedly governed by an express contract, any recovery of damages by the appellee based on his payment of those expenses must be governed by that contract. "[T]here cannot be an express and implied contract for the same thing existing at the same time between the same parties. It is only when the parties themselves do not expressly agree, that the law interposes and raises a promise. (Cit.)" *Fonda Corp. v. Southern Sprinkler Co.*, 144 Ga. App. 287, 292 (3) (241 SE2d 256) (1977).

3. In view of the fact that a "bona fide controversy" did exist with respect to the appellee's claim for payment of the gas bills, and in view of the fact that this portion of the claim constituted the lion's share of the appellee's total claim, it cannot be said that the appellant was stubbornly litigious or that she caused the appellee unnecessary trouble and expense by defending the suit. Consequently, the award of attorney fees and expenses of litigation to the appellee pursuant to OCGA § 13-6-11 was not authorized. Accord *Jordan Bridge Co. v. I. S. Bailey, Jr., Inc.*, 164 Ga. App. 124, 126-127 (296 SE2d 107) (1982). See also *Buffalo Cab Co. v. Williams*, 126 Ga. App. 522, 524 (191 SE2d 317) (1972); *Beaudry Ford, Inc. v. Bonds*, 139 Ga. App. 230 (2) (228 SE2d 208) (1976); *Ideal Pool Corp. v. Champion*, 157 Ga. App. 380 (3) (277 SE2d 753) (1981).

4. The award of $3,000 in "general damages" would not have been authorized even had the evidence been otherwise sufficient to support the appellee's entire claim. The total amount of utility expenses for which the appellee sought reimbursement, including the gas expenses, was $6,382.69, which was essentially the amount

awarded to him as "special damages." As evidentiary support for the award of "general damages," the appellee relies solely on his own testimony that he had experienced a lot of "headaches" and "aggravation" in dealing with the controversy and that he had lost some unspecified amount of time from his dental practice as a result thereof. This testimony was insufficient to support a separate award of damages in any amount. " 'The burden is on the plaintiff to show both the breach and the damage (cit.), and this must be done by evidence which will furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of damages. (Cit.) It cannot be left to speculation . . . and guesswork. (Cit.)' " *Hosp. Auth. of Charlton County v. Bryant,* 157 Ga. App. 330, 331 (2) (277 SE2d 322) (1981), citing *Bennett v. Associated Food Stores,* 118 Ga. App. 711, 716 (165 SE2d 581) (1968). See generally OCGA § 13-6-2. Only actual (i.e., compensatory) or nominal damages are recoverable in a breach of contract case. See OCGA §§ 13-6-1; 13-6-6; 13-6-8; 13-6-9. Punitive damages or damages for "aggravation" are not allowed. See OCGA § 13-6-10.

5. The trial court erred in allowing the appellee to testify, over objection, that he had received a "Carnegie Foundation Award" for his past heroism in rescuing two persons from a burning automobile and had given the proceeds to charity, such testimony being totally irrelevant to the issue of the appellant's liability for payment of the utility expenses. "The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2. See *Housing Auth. of Atlanta v. Green,* 169 Ga. App. 211, 212 (312 SE2d 196) (1983). Although the appellant contended at trial that the appellee was motivated by a desire for revenge due to the magazine articles she had written attacking the dental profession, this did not operate to place in issue his character or reputation for veracity (compare *Edwards v. Simpson,* 123 Ga. App. 44, 46 (179 SE2d 266) (1970)), and even if it had, his testimony regarding past acts of heroism on his part would not have been admissible in rebuttal as proof of his good character. See *Taylor v. Marsh,* 107 Ga. App. 575, 577 (2) (130 SE2d 770) (1963). "[T]he rule in Georgia is that good character may be proved only by testimony of a witness as to the reputation of the person whose character is in issue. (Cits.)" *Waters v. State,* 248 Ga. 355, 366 (283 SE2d 238) (1981).

6. The appellee's motion for imposition of a 10 percent penalty pursuant to OCGA § 5-6-6 for filing a frivolous appeal is necessarily denied.

*Judgment reversed. McMurray, P. J., and Benham, J., concur.*

DECIDED JUNE 13, 1985 —
REHEARING DENIED JUNE 28, 1985 — 

*Louisa Abbot,* for appellant.
*Kenneth L. Royal,* for appellee.