## 73156. SOUTHERN DISCOUNT COMPANY et al.
## v. KIRKLAND et al.
### (351 SE2d 685)

BIRDSONG, Presiding Judge.

Bill and Merlene Kirkland, doing business as Kirby Sales & Service, sold vacuum cleaners, door-to-door, in Columbus, Georgia. The vacuum cleaners were usually sold on credit and financed through different financial institutions. The principal financing agency was Southern Discount Company. Doug Lucas was president of Southern. The Kirklands executed a Master Dealer Agreement with Southern wherein they agreed that Southern could retain 5% of any unpaid balance of any note purchased by Southern from the Kirklands. That sum would be deposited in a dealer's Reserve Fund to be used to pay off any contract financed by Southern for the Kirklands which went into default. The Kirklands' contracts were transferred to Southern "with recourse," and the Master Dealer Agreement provided that, upon default, the Kirklands would repurchase any defaulted notes and contracts without the necessity of charging the unpaid amount to the dealer's reserve account. However, those defaulted notes and contracts not repurchased would be charged to the dealer's reserve account. The Master Dealer Agreement gave Southern the right to "endorse [Kirkland's] name upon any commercial paper received in payment upon said notes." Over the course of two years, the Kirklands financed approximately 300 retail sales of vacuum cleaners with Southern. The Dealer's Reserve account shows no charges to it in

1978. Thirty-five defaulted contracts were charged to the account in 1979. Fourteen defaulted contracts were charged to the account in the first four months of 1980 and a balance remained in the account of a few hundred dollars. The parties ceased doing business with each other, and the Kirklands brought this action on June 26, 1980.

This complaint was filed in four counts. Count I alleged that Lucas "maliciously, wilfully, tortiously, and with intent to cheat, swindle, and defraud, called upon plaintiffs to pay in full the remaining balances of certain contracts sold by plaintiffs to defendants knowing that said contracts were not in default, and had in fact been paid in full" and because of the defendants' acts the Kirklands were entitled to "exemplary damages." Count II alleged that defendant "wilfully, maliciously, intentionally, fraudulently, and in bad faith" represented to the Kirklands that "two contracts that [the Kirklands] sold to [Southern] were in default, and [Southern] called upon the [Kirklands] to pay the remaining unpaid balance" of the contracts, but the contracts were not sold by plaintiffs to the defendants and the Kirklands sought "exemplary damages." Count III alleged that Southern had "repossessed numerous vacuum cleaners from customers of the plaintiffs . . ." and that the Kirklands had paid the unpaid balances on said contracts, either by check or by debit against their dealer reserve account, and that Southern "wilfully, maliciously, deceitfully, unlawfully, and with intent to deprive plaintiffs of the use of their vacuum cleaners, converted them to the use of the defendants."

Count IV can best be described as the remainder of the complaint. Paragraphs 2 and 3 allege Southern "on at least one occasion . . . caused plaintiffs to pay the remaining unpaid balance of one . . . contract twice." Paragraphs 4 and 5 allege that Southern "on at least four occasions . . . advised the plaintiffs that they had repossessed" vacuum cleaners from defaulting customers "when in fact they had not," and such representations "were false . . . and were made for the sole purpose of deceiving and defrauding plaintiffs." Paragraph 6 stated that "on at least thirty occasions" the Kirklands had paid the unpaid balances due on defaulted contracts which had been sold to Southern "with recourse," and that Southern had returned the contracts marked "Paid" thereby "depriving plaintiffs of their rights of recourse against the defaulting customers. . . ." The Kirklands alleged that they suffered damages in the amount of $16,792.24 because of these acts of Southern alleged in paragraph 6. Paragraphs 7 and 8 of Count IV alleged that Lucas accepted payment of funds from the Kirklands to be applied to a specific contract and he represented to them that he would apply one-half of the amount to the specific contract and would apply the other one-half to another contract in default, but never credited that sum to the other contract, and such representations were made with the purpose of deceiving and de-

frauding, cheating and swindling the Kirklands.

Our Code provides that "[e]ach claim founded upon a separate transaction or occurrence . . . shall be stated in a separate count . . . whenever a separation facilitates the clear presentation of the matters set forth." OCGA § 9-11-10 (b); see generally Davis & Shulman's Ga. Practice & Procedure, § 2-15. The fourth count includes four separate unrelated claims for damages and presents problems for both the trial and appellate courts, as will be discussed herein.

The plaintiffs sought $1,000,000 in "actual damages" and one-half million dollars in punitive damages. The trial court charged the jury on the definitions of a contract, proximate cause, fraud, damages for a breach of contract — without defining what is a breach — and conversion of "an instrument" by refusal of a drawee to whom it is delivered for acceptance who refused to return it on demand or to pay it.

The jury returned a verdict for "breach of contract" — $10,000; "for the fraud" — $20,000; "for the conversion" — $20,000, and "in punitives" — $125,000. Defendants bring this appeal. *Held*:

1. Error is enumerated in the failure of the trial court to grant defendants' motion for directed verdict "as to . . . Count IV . . ." at the close of plaintiffs' evidence and at the close of all the evidence. The first problem faced by this court is that there was no charge on, or decision reached by the jury as to, any count — only on the general subjects of "contract," "fraud," "conversion," and damages for a breach of contract and fraud. One of the paragraphs of Count IV alleged that plaintiffs were damaged in the amount of $16,792.24 when defendant Lucas "on at least thirty occasions" returned contracts stamped "paid" on the face thereof, "thereby depriving plaintiffs of their rights of recourse against the defaulting customers. . . ."

Words importing payment or satisfaction of a debt stamped upon an instrument are only prima facie evidence of that fact, and may be denied and explained by parol evidence. *Ford Motor Credit Co. v. Parsons*, 155 Ga. App. 46, 47 (270 SE2d 230); *Gellis v. B.L.I. Constr. Co.*, 148 Ga. App. 527, 534 (G) (251 SE2d 800); *Complete AAA Mfg. Corp. v. C & S Nat. Bank*, 119 Ga. App. 450, 451 (167 SE2d 734); *Schaffer v. Wolbe*, 117 Ga. App. 118, 121 (159 SE2d 924); *Security Fin. Corp. v. Blackwood*, 111 Ga. App. 850, 851 (143 SE2d 515). An action to collect the unpaid balance remaining due by the creditor is not barred by the word "paid" stamped upon the note or contract. *Dabney v. Brigham Motors Co.*, 32 Ga. App. 652, 655 (124 SE 370); accord *Parsons*, supra; *Gellis*, supra. The trial court erred in not sustaining this portion of defendant's motion for directed verdict on Count IV.

2. Defendants contend the trial court erred in not granting defendants' motion for directed verdict at the close of plaintiffs' evi-

dence on "breach of contract." We agree. Count III alleged conversion, and the remaining three counts alleged torts and sought exemplary damages. Exemplary damages may not be awarded for a breach of contract. *Jones v. Central Bldrs. Supply Co.*, 217 Ga. 190, 195 (121 SE2d 633); *Ginsberg v. Termotto*, 175 Ga. App. 265, 268 (333 SE2d 120); OCGA § 13-6-10. Plaintiffs' complaint neither alleged nor sought damages for a breach of contract.

Further, the court charged only on the definition of *a* contract, and that this action involved "contracts . . . fraud and conversion." According to the testimony, more than 300 contracts were involved. The trial court never limited its charge to any particular contract, nor gave any instruction as to what would constitute a breach, or what the alleged breach was in the instant case. There was argument that the Master Dealer contract was not followed by the defendants as they withheld more than the permissible 5 percent. However, assuming this was the contract and the breach in issue, the measure of damages would be the amount of loss suffered by the aggrieved party. OCGA § 13-6-2. All amounts withheld by defendants were credited to plaintiffs' dealer reserve account and all amounts credited to that account were subsequently applied to defaulted contracts except for a few hundred dollars. Any recovery would be restricted to that amount, or nominal damages, where the evidence was insufficient for the jury to ascertain any actual damages. *Crawford & Assoc. v. Groves-Keen*, 127 Ga. App. 646 (194 SE2d 499). Thus, the verdict of $10,000 for breach of contract is not supported by the evidence.

3. Count III of the complaint sought exemplary damages for "vacuum cleaners, converted . . . to the use of the defendants." The trial court charged the jury only on conversion of "an instrument . . . when a drawee to whom it is delivered for acceptance refuses to return it on demand. . . ." Counsel had argued to the court that the conversion claim could only relate to two checks — one for $800, and one for $449.50. However, there was no pleading alleging conversion of a negotiable instrument, and no prayer for damages for conversion of commercial paper. Pre-trial discovery went only to the issue of conversion of the vacuum cleaners and plaintiffs' counsel, in his submission to the court for a pre-trial order advised the court that defendants had admitted they were in possession of ten vacuum cleaners which had been sold by plaintiffs to various customers and "[d]efendants have refused to return the vacuum cleaners to the plaintiffs, and this constitutes conversion of plaintiff's property."

We are aware that pleadings under the CPA are to be liberally construed in favor of the pleader and must be construed so as to do substantial justice. OCGA § 9-11-8 (f). However, the code also requires the jury verdict "shall cover the issues made by the pleadings. . . ." OCGA § 9-12-1. But, "[w]hen issues not raised by the

pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." OCGA § 9-11-15 (b). No attempt was made by the plaintiff to formally amend the pleadings and the transcript does not reveal a consent by the defendant to an amendment. This leaves only for our consideration whether defendant impliedly consented to such an amendment. We have found no decisional authorities in Georgia on the specific issue raised by the facts in this case, but as our CPA was patterned after the Federal Rules, we may consider federal cases on this point. *Worley v. Worley*, 161 Ga. App. 44, 45 (288 SE2d 854).

It cannot be said that there is implied consent to try an issue not made by the pleadings if the parties do not squarely recognize it as an issue in the trial. *Consolidated Data Terminals v. Applied &c. Systems*, 708 F2d 385 (16) (9th Cir. 1983). Where no objection is made to evidence on an issue, this court has found implied consent. *Mulkey v. Gen. Motors Corp.*, 164 Ga. App. 752 (299 SE2d 48), rev'd sub. nom. *Andean Motor Co. v. Mulkey*, 251 Ga. 32 (2) (302 SE2d 550). Where a party does not object to evidence because it is relevant to an issue made by the pleadings, and there is no evidence the party offering such evidence was seeking to amend the pleadings, a non-objecting party can scarcely be held to have given him implied consent to trial of unpled issues. *Jimenez v. Tuna Vessel Granada*, 652 F2d 415, 421 (5th Cir. 1981); accord *Intl. Harvester Credit v. East Coast Truck*, 547 F2d 888, 890 (5th Cir. 1977); *Bettes v. Stonewall Ins. Co.*, 480 F2d 92, 94-95 (5th Cir. 1973).

Hence, where the evidence offered here was relevant to an issue before the court, implied consent to an amendment of the pleadings will not be implied absent a clear indication the party introducing the evidence was attempting to raise a new issue. *Intl. Harvester*, supra at 890; accord *Smith v. Smith*, 235 Ga. 109, 113 (218 SE2d 843).

The evidence relating to the $800 check and the $449.50 check, according to plaintiffs' pre-trial submission to the court for a pre-trial order, related to paragraphs 7 and 8 of Count IV. Any objection to the evidence of conversion of those two checks would have been overruled as it was admissible on the issues made in Count IV. Accordingly, any portion of the judgment relating to Count III would have to be reversed. Because the conversion count asked for exemplary damages, the jury verdict for exemplary damages is based in part on conversion and cannot be sustained.

4. The jury verdict as to breach of contract, conversion, and exemplary damages not being sustainable, only the verdict as to fraud remains to be considered. The defendant alleges there is no evidence to support a verdict that plaintiff suffered damages from any fraud perpetrated by defendants in the amount of the verdict of $20,000.

As stated above, it is required by our code that "[t]he verdict

shall cover the issues made by the pleadings. . . ." OCGA § 9-12-1. Any verdict that does not cover the issues made by the pleadings must be set aside. *Pickron v. Garrett*, 73 Ga. App. 61, 65 (35 SE2d 540). No verdict or judgment, whether found by the jury or the court, can stand unless it is so phrased as to determine, with definiteness, the issues made by the pleadings. *Moseley v. Binford*, 31 Ga. App. 513 (1) (121 SE 127). "Fraud" is an element which our code specifies must be "stated with particularity." OCGA § 9-11-9 (b). We see no just reason why the jury verdict should be subject to a lesser degree of certainty.

In the instant case, Count I raised the issue of fraud as to four contracts. Count II asserted fraud as to two contracts. The allegation of fraud in Count IV also dealt with identified contracts. The trial court instructed the jury only on the definition of fraud, *actual and constructive*, the five elements of fraud, and the necessity of the injured party to use ordinary care to protect himself. First, in Count I, plaintiffs alleged defendants "maliciously, wilfully, tortiously, and with intent to cheat, swindle, and defraud" committed the "wilful, malicious, wanton, deceitful, and fraudulent acts. . . ." Count II averred that defendant Lucas, "under specific instructions from . . . Southern . . . wilfully, maliciously, intentionally, fraudulently, and in bad faith" made "false representations" which were "intentional, wilful, wanton, and made in an attempt to deceive and defraud the plaintiffs. . . ." Count IV also alleged defendants "wilfully, intentionally, maliciously, and with intent to defraud and deceive" caused plaintiffs to pay one contract twice, and made other "false representations" which were "wanton, wilful, malicious, and intentional acts."

It is evident that Counts I, II and IV allege actual fraud in violation of OCGA § 51-6-1, which requires a showing of "actual fraud or moral fraud." *Trailmobile v. Barton Environmental*, 167 Ga. App. 1, 2 (306 SE2d 1); 12 EGL 461, Fraud & Deceit, § 4. Actual fraud, unlike negligence or breach of contract, is premised upon "actual moral guilt." *Lively v. Garnick*, 160 Ga. App. 591, 592 (287 SE2d 553). "Constructive fraud" which was charged by the court to the jury, exists only as an equitable doctrine "and will not support an action in tort for damages." *Irvin v. Lowe's of Gainesville*, 165 Ga. App. 828, 830 (302 SE2d 734); accord *Lively*, supra at 593; see OCGA §§ 23-2-51; 23-2-52; 12 EGL 473, Fraud & Deceit, § 10. The trial court's charge permitted a finding of constructive fraud to support an allegation of actual fraud.

Further, no charge was ever given on, or a verdict reached by the jury as to the allegations of actual fraud charged in Counts I, II, and IV. It is impossible for an appellate court to address an enumeration of error as to a particular count when the trial court never charges the jury as to that count, and the jury never reaches a verdict as to that

count for the plaintiff or defendant. Inasmuch as the verdict does not reach the issues made by the pleadings, it is not sustainable.

*Judgment reversed. Banke, C. J., and Sognier, J., concur.*

DECIDED DECEMBER 1, 1986 —
REHEARING DENIED DECEMBER 12, 1986.

*Milton Jones, W. Rhett Tanner, Michael J. Templeton*, for appellants.

*B. Seth Harp, Jr.*, for appellees.