A91A0109. SMITH DEVELOPMENT, INC. v. FLOOD.
(403 SE2d 249)

BIRDSONG, Presiding Judge.

Appellant/plaintiff, Smith Development, Inc., appeals the bench trial judgment in favor of appellee/defendant Kim M. Flood in its action grounded on quantum meruit and unjust enrichment.

Appellant was contacted to build a house for Mr. and Mrs. Dyer on land being offered for sale and owned jointly by appellee Flood and her friend Boling. Appellant's salesman contacted Boling regarding the purchase of the land. Although an approximate purchase price of $12,000 probably was mentioned, no agreement was reached and no written contract for purchase executed. Boling informed appellant's agent that he was not the sole owner of the lot and could sell it.

About mid-October of 1988, Boling visited the lot with a prospective buyer and discovered "somebody" was building a house; the foundation was affixed to the land, subflooring had been installed, and a septic tank was in the ground but not covered with dirt. Boling contacted appellee Flood who did not know who was building on their property. Neither joint owner had given anyone permission to build. A few days later, appellee ascertained appellant probably was the builder and contacted an attorney. Boling subsequently conveyed his interest in the lot to appellee Flood.

On October 19, 1988, appellee's attorney immediately phoned an office employee of appellant and gave notification there was no agreement to purchase the land, and "that she needed to have them get off [appellee's] property until this matter was settled." By letter, dated October 20, 1988, appellee's attorney confirmed his prior telephone call, stated "no contact" occurred between the parties "other than a verbal agreement to sell this property" to Dyer for $12,000, and warned "until a deed is executed *and monies paid* on behalf of my

clients, I would request that no further construction take place on this property, or if you do so it will be at your own peril." (Emphasis supplied.) On October 21, 1988, appellee's attorney sent appellant another letter stating that as appellee had now suffered additional expenses, including attorney fees, she would not sell the lot unless these expenses were paid in addition to the $12,000. This letter contained a caveat that "until this matter is resolved my client does not desire any further construction on her property." On November 2, 1988, appellant responded with a general offer to place the $12,000 in escrow plus accrued interest and reasonable attorney fees. On November 4, 1988, appellee's counsel sent a letter indicating general agreement, but specifying the Dyers pay $12,000 plus attorney fees of $250 and interest at 11 percent until date of closing. This letter re-emphasized that "until this matter is settled I would not suggest any further construction on this property." Subsequently, appellant's president sent a counter offer containing a security deed and note, which appellee apparently refused to accept as her $12,000 offer was a "cash offer."

Appellant continued construction during the negotiation process, and the house was substantially completed on November 17, 1988. About February 1989, appellee tendered a final offer with an expiration date of February 11, 1989, to sell the lot for $16,000. Appellant's president testified and made in-court admissions that in September and October of 1988, appellant knew who owned the land; appellant "obviously jumped the gun on starting the house" without a contract; and, that appellant could not get the FHA loan "worked out" and could not close by the deadline.

The February 11 deadline passed without the final offer being accepted. Appellee expended approximately $2,700 on house expenses, including installation of a dishwasher and stove, and rented the premises under a lease-purchase agreement on April 1, 1989. The purchase option was never exercised, but appellee received approximately $6,000 in rent. *Held*:

1. The trial judge's findings of fact, included inter alia findings the house was approximately 50 percent completed before it was discovered by Boling; appellee's attorney advised appellant to stop construction until appellee was paid and deeds delivered; he again told appellant that appellee "wanted construction to halt"; appellant never stopped construction; and, the house was substantially completed by November 17, 1989. The trial judge also found "the fair market value of the land was $16,000 and the house built . . . has a reasonable [value] *to the [appellant]* of $40,400." (Emphasis supplied.)

Findings shall not be set aside unless clearly erroneous. OCGA § 9-11-52 (a). The findings of fact are all adequately supported by evidence of record, and we are bound thereby.

2. Appellant's claim for recovery based on unjust enrichment and grounded upon a contract implied in law or quasi contract is without merit. "If a benefit was conferred upon [appellee] at the expense of [appellant], it was not a benefit for which [appellee] became obligated to [appellant] under the theory of unjust enrichment." See, e.g., *Lawson v. O'Kelley*, 81 Ga. App. 883, 886 (60 SE2d 380); 6 EGL (1989 Rev.), Contracts, § 49. Moreover, appellant appeared before the trial court having voluntarily commenced building on appellee's property without her knowledge or consent, and by continuing building after being notified by appellee that to do so was at appellant's peril and that appellee wanted construction to halt. Those who seek equity must do equity; as appellant's conduct is incompatible with the "clean hands" doctrine, the equitable remedies of contract implied in law or quasi contract and recovery on the basis of unjust enrichment are not available to it. See *Murawski v. Roland Well Drilling*, 188 Ga. App. 760, 765 (2) (374 SE2d 207). Additionally, see Division 3 (b), below.

3. Appellant argues it is entitled to recovery on the theory of quantum meruit arising from the existence of a contract implied in fact.

(a) Where quantum meruit is an available remedy value means value to the owner rather than the cost of producing the result of the contractor. *Stowers v. Hall*, 159 Ga. App. 501, 502 (3) (283 SE2d 714); *Bowen v. Ken-Mar Constr. Co.*, 145 Ga. App. 708, 709 (1) (244 SE2d 646). But, in view of our holding, we need not determine whether defensive litigation costs and other factors reduced appellee's value in the property to a level lower than the value of the property found reasonable as to appellant by the trial court.

(b) "Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof" (OCGA § 9-2-7); and, generally an action of this type is grounded upon quantum meruit (*First Nat. Bank &c. Co. v. McNatt*, 141 Ga. App. 6, 8 (232 SE2d 356)); but cf., *Ginsberg v. Termotto*, 175 Ga. App. 265, 267 (1) (333 SE2d 120). The presumptions under this statute arise by operation of law (*Hudson v. Hudson*, 90 Ga. 581 (1) (16 SE 349)) and are rebuttable (see generally *Atlantic Coast Line R. Co. v. Drake*, 21 Ga. App. 81, 84 (2) (94 SE 65)). A contract to pay will not be implied from the mere performance of services. *Phinazee v. Bunn*, 123 Ga. 230 (1) (51 SE 300).

Appellee could not accept any services from appellant of which she was totally unaware. See *Booth v. Watson*, 153 Ga. App. 672, 677 (2) (266 SE2d 326). Accordingly, any acceptance of services would have to arise by virtue of the parties' conduct after appellee became aware of the construction on her lot. Appellant argues that such con-

duct is demonstrated by appellee's continued negotiation with appellant as to the sale of the lot and her ultimate leasing of the lot to a third party. Under the existing circumstances we do not agree.

"Where a party derives any benefit from services rendered by another, the law reasonably implies, on the part of the one who has received such benefit, a promise to pay, which promise is enforced on grounds of justice in order to compel the performance of a legal and moral duty." 98 CJS, Work & Labor, § 6 (a); compare *Atlanta Limousine Svc. v. Nichols*, 155 Ga. App. 742 (272 SE2d 584); *Brumby v. Smith &c. Co.*, 123 Ga. App. 443 (181 SE2d 303) with *Williams v. Coca-Cola Co.*, 158 Ga. App. 139, 141 (3) (279 SE2d 261) (quantum meruit predicated on implied promise to pay arises only if defendant accepts valuable services). "This rule applies at least where the work is done with the knowledge or approbation of the party benefited, and *unless* it appears that there was an understanding that no compensation should be given; where there is such an understanding the law will *not* imply a promise, and such understanding may be implied from circumstances." (Emphasis supplied.) 98 CJS, supra. Thus, a presumption of law that the person enjoying the benefit of services is bound to pay for them, is subject to rebuttal by proof either "that the services were intended to be gratuitous *or by particular circumstances from which the law would raise the counterpresumption that the services were not intended to be a charge against the party benefited thereby*." (Emphasis supplied.) 98 CJS, supra.

Existing precedent in Georgia appears compatible with the above rule. "Quantum meruit lies ordinarily when one renders services valuable to another which the latter [voluntarily] accepts, raising the implication of a promise to pay the reasonable value thereof." *Griner v. Foskey*, 158 Ga. App. 769, 771 (2) (282 SE2d 150); *Guyton v. Young*, 84 Ga. App. 155, 158 (2) (65 SE2d 858); accord *Jackson v. Buice*, 132 Ga. 51, 53 (63 SE 823). However, the promise to pay is rebutted if from the facts and circumstances it appears that the services were "rendered gratuitously." *Cooper v. Cooper*, 59 Ga. App. 832 (2 SE2d 145); see also *Guyton v. Young*, supra at 162. Whether services were intended to be rendered gratuitously ordinarily is a question for the finder of fact to determine. *McRae v. Britton*, 144 Ga. App. 340, 344 (240 SE2d 904). Moreover, " '[a] recovery on a quantum meruit basis may not be obtained where the services (even if beneficial) are rendered with no anticipation that compensation is to be received.' " *Creative Svc. v. Spears Constr. Co.*, 130 Ga. App. 145 (3) (202 SE2d 581); accord *Pembroke Steel Co. v. Technical Sales Assoc.*, 138 Ga. App. 744, 745 (2) (227 SE2d 491). "[T]he law will not imply a promise to pay for services contrary to the intention of the parties. There can be no recovery for services rendered voluntarily and with no expectation *at the time of the rendition* that they will be compensated. . . .

Under such circumstances no obligation . . . is incurred. A subsequent change of intention by the parties performing the services does *not* alter the rule." (Citations and punctuation omitted.) *Addison v. Southern R. Co.*, 108 Ga. App. 314, 315-316 (132 SE2d 833).

Inherent within the judgment of the trial court is the implicit finding that it was not intended at the time the services were rendered appellee would pay appellant. In this regard, the record reflects the services were rendered on appellee's land in furtherance of an arrangement struck between appellant and the Dyers, and that when the services were performed appellant never contemplated appellee would be paying therefor. Accordingly, no presumption of law arises that appellee was to pay appellant for its services. See *Henry Pilcher's Sons v. Thompson*, 145 Ga. 604 (89 SE 698) and *Vason v. Strauss*, 75 Ga. 833.

Appellant's assertion that appellee voluntarily accepted his services by subsequently leasing the house is without merit. The trial court, citing *Sutton v. United States*, 256 U. S. 575 (41 SC 563, 65 LE 1099), has persuasively concluded that the appellee "did not accept or ratify the [appellant's] work because she has not chosen to tear the house down, but has instead used it." *Sutton*, supra at 580, states " '[w]henever a structure is permanently affixed to real property belonging to an individual, without his consent or request, he cannot be held responsible because of its subsequent use. It becomes his by being annexed to the soil; and he is not obliged to remove it to escape liability. He is not deemed to have accepted it so as to incur an obligation to pay for it, merely because he has not chosen to tear it down, but has seen fit to use it.' *United States v. Pacific Railroad*, 120 U. S. 227, 240 [7 SC 490, 30 LE 634]." Although this rule on occasion can be harsh, it is necessary; otherwise innocent landowners could be at the mercy of trespassing builders who could build indiscriminately on other's lands knowing ultimately they will be compensated from some source. We need not determine exactly at what point in time the house became a fixture. By the time the February deadline passed, without appellant's purchase of the land, the house was attached to the land as a fixture — belonging to appellee to do with as she desired. See generally OCGA §§ 44-1-2; 44-1-6 (a).

*Judgment affirmed. Pope and Cooper, JJ., concur.*

DECIDED MARCH 4, 1991.

*Bates, Kelehear & Starr, L. Stephen Kelehear*, for appellant.
*McDonald, Kinnamon & Thames, E. Crawford McDonald, Jef-*

*frey J. Dean*, for appellee.