## A05A2250. INVESTMENT PROPERTIES COMPANY, INC. et al. v. WATSON.

### (628 SE2d 155)

RUFFIN, Chief Judge.

Steven Watson ("Watson") sued Investment Properties Company, Inc. and Robert Brown, asserting that Brown breached a contract to convey certain real property to Watson in exchange for Watson building a bridge.[1] A jury found in favor of Watson, and Brown appeals, claiming that the evidence did not support the verdict. Brown also contends that the trial court erred in: (1) admitting certain evidence; (2) permitting Watson to amend his complaint after trial commenced; and (3) allowing the jury to modify the verdict form to grant relief beyond that sought by Watson. For reasons discussed below, we affirm in part and reverse in part.

Viewed in a light favorable to the jury's verdict,[2] the evidence showed that Robert Brown owned over 1,000 acres near Coal City Hollow. Brown sold some of the property to Larry and Martha Watson. Access to this property required crossing Coal City Creek, and as part of the sale, Brown agreed to build a bridge over the creek. Brown attempted to build a culvert across the creek using empty fuel tanks, but the bridge washed away, leaving only the empty tanks.

Brown asked another property owner, Benjamin Winnie, to let him know "if [Winnie] ever found anybody [he] thought was capable" of building the bridge. Winnie suggested Watson, to whom he was related by marriage. According to Winnie, Brown came by his house, and the two of them sat on the porch and discussed the bridge. Winnie testified that he told Brown that Watson "was looking for property to buy . . . [and that] it was prime time to get some free labor, some donated materials and quality personnel to build the bridge." Winnie and others agreed to work as laborers on the project.

The men began working on the bridge before the agreement was memorialized in writing. According to Watson, he met with Brown at the building site, and the two agreed that Watson would build a bridge in exchange for ten acres of land.

As part of the agreement to build the bridge, Brown sought to obtain an easement over the Winnies' property, and Larry and Martha Watson required an easement to use the bridge, which was located on Brown's property. Thus, in addition to Watson and Brown, Benjamin and Janet Winnie and Larry and Martha Brown were also parties to the agreement. Janet Winnie contacted a lawyer, who

---

[1] Brown is the sole owner of Investment Properties. For ease of reading, we refer solely to Brown.

[2] See *Swann v. Shorter*, 262 Ga. App. 808 (1) (586 SE2d 711) (2003).

drafted the contract. This two-page document provided, in pertinent part, that "[u]pon completion of the bridge [Brown] agrees to convey to [Watson] the Property (Tracts 14 and 15) . . . said transfer to occur within ten working days of the completion of the bridge."

The contract was then given to Brown. According to Brown, although he had discussed transferring land to Watson in exchange for building the bridge, the amount of land had not been agreed upon. When Brown received the contract, he modified it to read "see attached amendment" on page one, and he initialed the change. Brown then inserted a second page that provided that "[Watson] gets either [Tract] 14 or 15 (his choice) free and clear for building the bridge." None of the other signatories initialed the amendment, and the Winnies and Watson testified that the agreement had neither the "see attached amendment" language on page one nor an attachment when they signed it.[3]

After the bridge was built, Brown did not transfer the ten acres to Watson. Moreover, Brown began to question Watson about the addition of "wing walls" to the bridge. Although Brown conceded that the bridge was well built, he maintained that adding wing walls would prevent erosion of the land near the bridge. Watson, on the other hand, claimed that wing walls were not necessary.[4] In lieu of adding wing walls, Brown requested that Watson sign an agreement in which he would accept responsibility for maintaining the bridge for three years, but Watson refused. Watson also claimed that, after the bridge was completed, Brown damaged the land that was to have been transferred to Watson by digging pits and removing trees.

Watson filed suit against Brown seeking specific performance of the contract or, in the alternative, damages. Following trial, the jury found in favor of Watson, and this appeal ensued.

1. On appeal, Brown contends that "[t]here is clearly no admissible evidence to support the verdict rendered by the jury." Specifically, he contends that the written contract showed that he agreed only to exchange five acres of land for the bridge.[5] According to Brown, evidence regarding an oral agreement to transfer ten acres constituted parol evidence and violated the Statute of Frauds. In a related argument, Brown contends that the trial court erred in admitting the parol evidence. Because both arguments are intertwined, we address them together.

---

[3] Larry and Martha Watson, the other two signatories, did not testify at trial.

[4] According to Watson, he built one wing wall in an attempt to appease Brown, but did not build a second wing wall.

[5] Brown does not contend that the written agreement is too vague to be enforced. He argues merely that the written agreement compels the conclusion that he agreed only to transfer five acres of land.

This dispute centers on the terms of the contract to which Brown and Watson agreed. Under the rules of contract construction, a court must first decide whether the language of the contract is clear and unambiguous.[6] If the contract is ambiguous and the ambiguity cannot be resolved by applying the rules of construction, the jury must determine what the ambiguous language means and what the parties intended.[7] "Ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and it also signifies doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations."[8] "[W]here an ambiguity exists in the written terms, parol evidence may be used in ascertaining [the parties'] intent."[9]

Generally, "[w]hen a contract is partly printed and partly written, the latter part is entitled to most [sic] consideration."[10] Under this rule, we should give greater consideration to the handwritten addendum at the bottom of the first page of the contract to "see attached amendment," which in turn refers to an agreement that Watson would accept only one five-acre lot in exchange for building the bridge. However, the *cardinal* rule of contract construction is to ascertain the intent of the parties at the time they entered into the agreement.[11] And here, there is no evidence that Watson agreed to the addendum, which was initialed solely by Brown. Indeed, Watson, Janet Winnie, and Benjamin Winnie all testified that the addendum was not on the contract, which they signed.

Given these unique circumstances, there is an ambiguity with respect to what the parties intended, and "[d]isagreement as to the intent of the parties is an evidentiary, factual matter for resolution by jury and not a matter of law for determination by the court."[12] It follows that the trial court did not err in admitting parol evidence, which was necessary to determine the parties' intent.

Even if such parol evidence was inadmissible to establish the parties' intent, it was admissible for another reason. One of Brown's arguments on appeal is that the Statute of Frauds bars Watson's claim. Under this statute, "[a]ny contract for sale of lands, or any

---

[6] See *Holcim (US), Inc. v. AMDG, Inc.*, 265 Ga. App. 818, 820 (596 SE2d 197) (2004).

[7] See id.

[8] (Punctuation omitted.) Id.

[9] Id.

[10] OCGA § 13-2-2 (7).

[11] See *Savage v. KGE Assoc. Ltd. Partnership*, 260 Ga. App. 770, 778 (2) (b) (580 SE2d 591) (2003).

[12] (Punctuation omitted.) *Atlanta Dev., Inc. v. Emerald Capital Investments*, 258 Ga. App. 472, 479 (1) (574 SE2d 585) (2002).

interest in, or concerning lands" must be in writing and signed to be enforceable.[13] "But the writing requirement imposed by the Statute of Frauds does not apply where there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance."[14] "The part performance required to obviate the Statute of Frauds must be substantial and essential to the contract and which results in a benefit to one party and a detriment to the other."[15] Whether there has been part performance sufficient to avoid the Statute of Frauds is a jury question.[16]

Thus, contrary to Brown's argument on appeal, the trial court did not err in admitting parol evidence regarding an agreement to transfer ten acres of land in exchange for building a bridge. We must next consider whether this evidence, combined with the other evidence presented, supported the jury's verdict.

Construed favorably to the verdict, the evidence shows that the parties initially entered a verbal agreement whereby Brown would transfer ten acres to Watson for the building of the bridge. Before the contract was reduced to writing, Watson began building the bridge at his own expense. And the bridge benefitted Brown, on whose property it was located, as Brown had previously agreed to provide a bridge to Larry and Martha Watson.

In this case, Watson clearly argued — and the trial court instructed the jury — that his performance of the contract when it was merely verbal rendered the agreement enforceable. Given the evidence presented, the jury was authorized to find in Watson's favor in this regard. "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence."[17]

2. Brown also argues that the trial court "committed prejudicial error by allowing evidentiary testimony related to the extent of real property and assets owned by [him]." At trial, Brown objected to testimony that he owned between 1,000 and 1,500 acres of land, which he contended was irrelevant. On appeal, Brown asserts that the testimony impermissibly implicated his wealth.

---

[13] OCGA § 13-5-30 (4).

[14] (Punctuation omitted.) *Fay v. Custom One Homes*, 276 Ga. App. 188, 191 (1) (b) (622 SE2d 870) (2005); see also OCGA § 13-5-31 (3).

[15] (Punctuation omitted.) *Smith Svc. Oil Co. v. Parker*, 250 Ga. App. 270, 271 (2) (549 SE2d 485) (2001).

[16] See *White House, Inc. v. Winkler*, 202 Ga. App. 603, 607 (415 SE2d 185) (1992); *Fay*, supra at 192.

[17] *Swann*, supra.

"The general rule [is] that evidence of the wealth or worldly circumstances of a party litigant is never admissible, except in those cases where position or wealth is necessarily involved."[18] Pretermitting whether the testimony regarding Brown's land violated this rule, we find no basis for reversal. Before the allegedly improper evidence was admitted, Benjamin Winnie testified that in the past his wife's family "owned the entire estate of over a thousand acres" that was subsequently sold to Brown. Brown did not object to this line of questioning. Thus, any additional testimony regarding the extent of his holdings was merely cumulative, and the admission of cumulative evidence provides no basis for reversal.[19]

3. When Watson initially filed suit, he attached to his complaint a copy of the contract that included Brown's amendment. Midway through trial, Watson realized that the complaint was misleading, and he sought to amend it to clarify that the contract attached to the original complaint was not what he had signed.[20] Since no pre-trial order had been entered, the trial court permitted Watson to amend his complaint. On appeal, Brown contends the trial court abused its discretion in allowing Watson to do so. We disagree.

OCGA § 9-11-15 (a) provides, in pertinent part, a litigant may amend a pleading "as a matter of course and without leave of court at any time before the entry of a pretrial order. Thereafter the party may amend his pleading only by leave of court or by written consent of the adverse party. Leave shall be freely given when justice so requires." Once trial has commenced, a party must obtain leave of court to amend its pleading.[21]

"Not only is the right of amendment very broad, but so is the court's discretion in this regard, and its determination will not be disturbed absent abuse."[22] It is within a trial court's authority to permit an amendment that strikes all or part of the original pleadings.[23] Before judgment is rendered, a party may even withdraw an admission in judicio.[24] Thus, the trial court was not beyond the bounds of law in permitting Watson to amend his complaint to clarify

---

[18] (Punctuation omitted.) *Weathers v. Cowan*, 176 Ga. App. 19 (1) (335 SE2d 392) (1985).

[19] See *Hornsby v. Phillips*, 190 Ga. App. 335, 341 (6) (378 SE2d 870) (1989) (admission of cumulative evidence harmless).

[20] The amended complaint was not included in the record on appeal. It appears the amendment averred that the contract Watson signed contained neither Brown's handwritten addendum nor the additional page, which Brown added.

[21] See *Ford's & Gantt Co. v. Wallace*, 249 Ga. App. 273, 276 (1) (548 SE2d 31) (2001).

[22] (Punctuation omitted.) Id.

[23] See *Stith v. Hudson*, 231 Ga. 520, 525 (2) (202 SE2d 392) (1973).

[24] See *Wahnschaff v. Erdman*, 232 Ga. App. 77, 78 (1) (502 SE2d 246) (1998) (party may amend pleading to withdraw admission in judicio); *In re McCool*, 267 Ga. App. 445, 448-449 (600 SE2d 403) (2004) (admission may not be withdrawn after judgment rendered).

what contract he signed, even if such amendment served to withdraw an admission in judicio. Under these circumstances, we cannot say that the trial court abused its discretion in permitting Watson to amend his complaint.

4. In his final enumeration of error, Brown contends that the trial court erred in allowing the jury to grant relief beyond that sought by Watson.

When Watson filed suit against Brown, he sought specific performance of the contract or, in the alternative, an award of damages. Watson further sought to "receive such other, further and general relief as may be just and equitable."[25] Following trial, the jury's verdict compelled performance of the contract and awarded Watson ten acres. The jury also modified the verdict form to include $7,500 in damages. Finally, the jury added several "stipulations" to the judgment, including that Brown: (1) restore the access roads and property to the conditions that existed at the time of the bridge's completion; (2) retain responsibility for maintaining the bridge; and (3) remove the culvert bridge.[26]

On appeal, Brown contends that the jury erred in both compelling him to transfer the land *and* awarding damages. He further argues the jury exceeded its authority in adding the "stipulations" to the verdict. According to Brown, "relief cannot be granted for matters not alleged or prayed for and [a] verdict and judgment which award relief beyond such pleadings and prayer is illegal and subject to be set aside." Watson, on the other hand, argues that although the additional issues may not have been raised in the pleadings, the evidence nonetheless raised the issues, which were then litigated.

Pursuant to OCGA § 9-11-15 (b), issues not raised by the pleadings will be treated as properly pleaded if such issues "are tried by express or implied consent of the parties." Furthermore, OCGA § 9-11-54 (c) (1) provides that, with the exception of default judgments,

> every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings; but the court shall not give the successful party relief, though he may be entitled to it, where the propriety of the relief was not

---

[25] Watson also sought exemplary damages, but such damages are not allowable in a contract case. See *Byrne v. Reardon*, 196 Ga. App. 735, 736 (3) (397 SE2d 22) (1990).

[26] The jury also included a stipulation that Brown pay Watson's legal fees. However, prior to the verdict being rendered, the trial court directed a verdict on the parties' cross-claims for attorney fees. Thus, this stipulation was not included in the trial court's judgment, and we do not address it on appeal.

litigated and the opposing party had no opportunity to assert defenses to such relief.

Here, there is no suggestion that additional issues were tried by consent, as the complaint was not amended to include additional claims and nothing in the record indicates that Brown consented to any amendment. Thus, we must only determine whether additional issues were tried by implication.[27] "Although a party's failure to object to evidence involving a new issue may imply consent, no consent can be found if the parties do not squarely recognize the new issue as an issue in the trial."[28]

(a) *Specific Performance and Damages.* We agree that the trial court erred in permitting the jury to award both specific performance and damages. It is abundantly clear from Watson's complaint that he sought *either* specific performance *or* damages. Indeed, he repeated his request for such relief at trial, testifying that if he was not awarded the acreage, he was "asking for an award of . . . monetary damages."

On appeal, Watson essentially argues that the evidence presented showed he was entitled to damages for some wrong other than the breach of contract, but he fails to articulate under what theory of recovery he might be entitled to such additional award. Watson seems to suggest the evidence that he spent $5,000 of his own money to build the bridge justifies the jury's verdict. However, a party does not impliedly consent to the trial of a new issue when the evidence that allegedly raised the new issue is also relevant to an issue made by the pleadings.[29] Since evidence of the money spent by Watson was relevant to his breach of contract theory, we cannot agree that its introduction resulted in the trial, by implication, of some other theory of recovery.[30] Under these circumstances, we find the award of monetary damages in addition to an award of specific performance tantamount to a double recovery, which is prohibited.[31] It follows that the trial court erred in entering judgment on both.

(b) *Stipulations.* We also agree that the jury's stipulations that Brown maintain the new bridge and remove the culvert bridge are

---

[27] See *Southern Discount Co. v. Kirkland*, 181 Ga. App. 263, 267 (3) (351 SE2d 685) (1986).

[28] (Punctuation omitted.) *Dildine v. Town & Country Truck Sales*, 259 Ga. App. 732, 735-736 (3) (577 SE2d 882) (2003).

[29] See id. at 736.

[30] See id.

[31] See *Ga. Northeastern R. v. Lusk*, 277 Ga. 245, 246 (1) (587 SE2d 643) (2003) ("Georgia, as part of its common law and public policy, has always prohibited a plaintiff from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole.").

beyond the scope of any issue properly tried. There was some evidence that the presence of the fuel tanks in the creek and that Brown's actions in cutting trees near the new bridge were undermining the new bridge's integrity. By including the stipulations, it appears the jury was attempting to ensure the long-term care of the new bridge. However, we cannot agree that this issue was tried by implication.

Nothing in Watson's complaint can be seen as requesting the type of relief granted by these two stipulations in the verdict. And on appeal, Watson does not specify any new theory that might entitle him to such relief, but merely states generally that the evidence supported it. Arguably, evidence that Brown was sabotaging the new bridge by cutting trees around it might give rise to a trespass claim.[32] But it does not appear that Watson would have standing to pursue such claim — or to request that Brown maintain the new bridge — as the bridge is located on Brown's property.[33] We fail to see how Brown could have impliedly consented to the trial of an issue that Watson lacked standing to raise. Accordingly, the trial court erred in entering judgment on this portion of the jury's verdict.

Nonetheless, the jury was authorized to require Brown to return the disputed ten acres to its original state. A trial judge is authorized to grant relief, even if it was not prayed for, so long as the propriety of such relief is litigated and the opposing party afforded an opportunity to assert a defense to the relief sought.[34] At trial, Watson specifically testified that he was seeking not only the ten acres, but that the land "be restored to the condition it was [in] when [he] should have received it." Thus, the propriety of this relief was litigated, and the trial court was authorized to grant the relief requested.[35]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 7, 2006.

*Wooden, Fulton & Scarborough, Tracy C. Wooden, Gregory E. Glass*, for appellants.
*David J. Dunn, Jr., Jennifer E. Hildebrand*, for appellee.

---

[32] See OCGA § 51-10-3 ("Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered.").

[33] See, e.g., *Smith v. Ga. Kaolin Co.*, 251 Ga. App. 195, 197 (1) (552 SE2d 495) (2001) (plaintiff who did not own property lacked standing to bring trespass claim). We note that Watson does not contend either that he required use of the bridge to access the disputed ten acres or that he had any easement interest in the bridge property.

[34] See *Church v. Darch*, 268 Ga. 237, 238 (2) (486 SE2d 344) (1997).

[35] See id.