S10A0131. HOOD et al. v. TODD.

(695 SE2d 31)

HUNSTEIN, Chief Justice.

Appellee Regina Gordon Todd seeks to establish her right to a child's share of the estate of testator John E. Buffington. The probate court denied a motion for summary judgment filed by the estate's executors, appellants Beth Buffington Hood and Ginger Buffington Folger, by which they sought an adjudication as a matter of law that Todd was not a beneficiary under the testator's will. This

Court granted appellants' application for interlocutory appeal, and, concluding that the probate court erred in finding a genuine issue of material fact regarding Todd's beneficiary status, we now reverse.

> [O]n appeal from the denial . . . of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [Cits.]

*Benton v. Benton*, 280 Ga. 468, 470 (629 SE2d 204) (2006). So viewed, the undisputed evidence reflects that Buffington died in August 2006, leaving a will providing, in relevant part, for distribution of his personal and household effects to "[his] children surviving [Buffington]" and distribution of the residue of his estate to the Buffington Family Trust, under which "each then living child of [Buffington]" and "each deceased child of [Buffington] who shall leave issue then living" is to receive an equal share of the estate's entire residue, in trust. The term "children" is specifically defined in the will, in pertinent part, as "only the lawful blood descendants in the first degree of the parent designated." An introductory portion of the will reads, "I have two living children, Beth Buffington Hood and Ginger Buffington Folger." In addition to being named co-executors of the will, Hood and Folger are also each appointed as trustee of the respective residuary trust established for her benefit. No other trustees of any other potential trusts (other than a successor trustee) are named.

Todd claims to be Buffington's biological daughter, asserting that she was fathered during an extra-marital affair between Buffington and Todd's mother and that Buffington acknowledged her as his daughter during his life. As such, Todd claims that she is entitled to a child's share of Buffington's estate. Following the initiation of probate proceedings, Todd filed a separate action in superior court seeking a declaration of her beneficiary status under Buffington's will and related equitable relief. The superior court transferred that action to the probate court, and appellants then moved for summary judgment on the issue of Todd's beneficiary status, asserting that Buffington's will unambiguously evinced his intent to exclude Todd as a beneficiary. Finding the existence of genuine issues of material fact as to Todd's status under the will, the probate court denied the motion.

Though there may be a genuine issue of fact as to Todd's status as Buffington's daughter, we conclude that resolution of this issue is unnecessary in determining Todd's status under Buffington's will, as

the will clearly and unambiguously expresses Buffington's intent that only Hood and Folger, the daughters born of his marriage, share as children thereunder. "In the construction of all wills, the court shall seek diligently for the intention of the testator and shall give effect to such intention as far as it may be consistent with the rules of law." OCGA § 53-4-55. "The court must look first to the 'four corners' of the will to discover that intent. [Cit.]" *American Cancer Society v. Estate of Massell*, 258 Ga. 717, 718 (373 SE2d 741) (1988). "Where the language of a will is clear . . . and can be given legal effect as it stands, the court will not, by construction, give the will a different effect. [Cits.]" *Seymour v. Presley*, 239 Ga. 572, 574-575 (1) (238 SE2d 347) (1977).

A testator may make any disposition of his property he chooses, so long as not contrary to law or public policy, even to the exclusion of his spouse and/or descendants. OCGA § 53-4-1. The testator need not expressly name an heir in his will in order to disinherit her, so long as the intent to disinherit is clearly expressed. Mary F. Radford, *Redfearn Wills and Administration in Georgia*, § 7:6 (15), at 316 (7th ed. 2008). " 'It is no proper concern of the court whether the disposition of one's property by will is wise or unwise, is justified or unjustified, so long as such disposition is legal and the intention of the testator is certain and clearly expressed by the terms of the will.' " (Citation omitted.) *Folsom v. Rowell*, 281 Ga. 494, 498 (2) (640 SE2d 5) (2007).

Here, the plain terms of the will clearly reflect Buffington's intent to exclude Todd. Todd is not mentioned in any portion of the will, as contrasted with Hood and Folger, who are specifically designated as Buffington's "two living children," are named co-executors, and are named as trustees of respective trusts created for each of them from the Buffington Family Trust. In addition, it is clear from the language creating the Family Trust that no other trusts were contemplated to be created therefrom, further illustrating Buffington's intent that only Hood and Folger be treated as his "children" for purposes of his will; the explicit provisions for the trusts for Hood and Folger reflect by negative implication that no trust was intended to be created for Todd.

Moreover, by defining the term "children" as *"lawful* blood descendants," Buffington also demonstrated his intent that his child born out of wedlock not be included as a beneficiary under his will. See *In re Estate of Wright*, 196 P3d 1075 (III) (Wash. Ct. App. 2008) (use of phrase "lawful descendants" reflected testator's intent to exclude child born out of wedlock); *Carey v. Jaynes*, 265 SW3d 801, 804 (Ky. Ct. App. 2008) (same with respect to phrase "lawful blood descendants"); *Harris Trust and Savings Bank v. Donovan*, 582

NE2d 120, 124 (Ill. 1991) (same with respect to trust defining "children" and "descendants" as "only lawful blood children and descendants"); *Presley v. Hanks*, 782 SW2d 482, 489-490 (Tenn. Ct. App. 1989) (same with respect to "lawful issue" and "lawful children"); *Traders Bank of Kansas City v. Goulding*, 711 SW2d 872, 875 (Mo. 1986) (same with respect to "lawful issue"). But see *Bell v. Forti*, 584 A2d 77, 81-82 (Md. Ct. App. 1991) (finding genuine issue of material fact as to whether out of wedlock daughter fell within class of testator's "lawful descendants"). Indeed, to construe the term "children," "defined in the will as 'lawful descendants[,]' . . . as though [it was] instead defined simply as 'descendants' would be to simply ignore the modifier, giving it no effect." *Estate of Wright*, supra at 1081 (III). As we are required in the construction of a will to give effect to all provisions therein, *Patterson v. Patterson*, 208 Ga. 17 (1) (64 SE2d 585) (1951), we are compelled to assign meaning to the term "lawful" and can only conclude that its use, particularly in combination with the other operative language of the will, reflects Buffington's intent to exclude Todd.

This is the case despite the evidence adduced by Todd that Buffington acknowledged that Todd was his daughter and even provided support for her during his lifetime, as it is undisputed that Buffington never took any steps to formally legitimate Todd and was even known to have referred to her as "little bastard." In other words, though Buffington may have believed Todd to be his daughter in fact, it is clear that he did not believe that Todd was his child in the eyes of the law. Thus, Buffington's use of the phrase "lawful blood descendants" reflects a clear and conscious desire on his part to exclude Todd as a beneficiary under his will.[1]

Similarly, Todd's effort to characterize the testamentary bequests as class gifts (i.e., to Buffington's "children") rather than as individual gifts to Hood and Folger fails to alter her status under the will. Again, because the class of "children" in which Todd claims to fall is defined as Buffington's "lawful blood descendants," Todd is explicitly excluded from taking as part of such class.

---

[1] Though Todd asserts that she has been legitimated under OCGA § 53-2-3 (2) (A) (iii) and (v), this assertion is incorrect. OCGA § 53-2-3 does not set forth legitimation procedures (which are instead prescribed in OCGA § 19-7-22) but merely addresses the inheritance rights of children born out of wedlock. Even if Todd were to establish that the requirements of OCGA § 53-2-3 (2) (A) (iii) or (v) had been fulfilled, doing so would merely make her *eligible* to inherit from Buffington. See OCGA § 53-2-3 (2) (C) ("[i]f any one of the requirements of divisions (i) through (v) of subparagraph (A) . . . is fulfilled . . . a child born out of wedlock *may* inherit in the same manner as though legitimate from and through the child's father") (emphasis supplied). The fact that Todd may have in fact been eligible to inherit as one of Buffington's children, however, is of no moment given Buffington's clearly expressed intention to exclude her as a beneficiary under his will. See OCGA § 53-4-1.

"We are mindful of the evolution in [the] law . . . with respect to recognizing the rights of illegitimate descendants. However, this is not a case of intestacy, and [Buffington] was free to dispose of his property as he provided in his will." *Carey,* supra, 265 SW3d at 804. Finding no genuine issues of material fact as to Todd's beneficiary status under Buffington's will, we conclude that the probate court erred in denying summary judgment to appellants and therefore reverse.

*Judgment reversed. All the Justices concur, except Thompson and Hines, JJ., who dissent.*

HINES, Justice, dissenting.

I respectfully dissent because the opinion of the majority is premised upon an ill-supported finding of testamentary intent based upon the faulty and perilous legal conclusion that the term "lawful," when used to describe blood descendants named in a will, necessarily precludes biological children born out of wedlock.

As the majority sets forth, in this case the would-be biological child of the testator, Regina Gordon Todd, is attempting to obtain a child's portion of the estate of the late John E. Buffington. Buffington's legitimate daughters, Beth Buffington Hood and Ginger Buffington Folger, petitioned the probate court to exclude Todd, as a matter of law, from any inheritance under their father's will. And, construing the facts in a light most favorable to the non-movant Todd, as it was obligated to do, the probate court quite rightly refused to grant Hood and Folger the summary judgment they sought. The evidence, viewed in the appropriate legal posture, demonstrated that Buffington was aware of Todd, believed her to be his biological daughter, and apparently had a good relationship with her; Buffington went so far as to name Todd as the beneficiary of two life insurance policies. Buffington even acknowledged Todd as his daughter in sworn testimony in an unrelated legal proceeding. Thus, there is substantial evidence to support Todd's familial claim and to find, at a minimum, the existence of a genuine issue of material fact regarding her being Buffington's daughter. Although the majority acknowledges this, it inexplicably proceeds to find that the unresolved issue of paternity is of no moment to the possibility of Todd's inheriting as one of Buffington's children. It does this by a mixture of factfinding in the guise of discerning testamentary intent and then reaching the legally dubious conclusion that the "plain terms of the will," without question, reflect Buffington's aim to exclude Todd.

The majority notes that Todd is not specifically named in the will, nor was a trust expressly created for her under the will, and thereby concludes by "negative implication" that Todd was purposefully bypassed as a beneficiary. However, any implication to that

adverse effect should control only if there is "such a strong probability that an intention to the contrary can not be supposed." *Pylant v. Burns*, 153 Ga. 529, 533 (112 SE 455) (1922). That is not the situation in this case. In fact, the general bequests and devises under the will do not specifically name the legitimate daughters either. And, while a testator's decision to designate beneficiaries by name, as a general matter, indicates the intent that the beneficiaries take under the will as individuals, there may exist other language in the will which demonstrates a controlling intention that the beneficiaries take as a class. *Whitlock v. Lawson*, 260 Ga. 520, 521 (397 SE2d 433) (1990). Indeed,

> [m]ere designation by name does not . . . in all cases show that the persons were dealt with as individuals, and not as a class[;] the intention of the grantor or testator must be gathered from the whole instrument; and if there are other words used which show that he had the persons named in mind as a class, this intention will be allowed to control. Where persons are designated by name, and language is also used which indicates that the maker of the instrument had them in mind not as individuals but as members of a class, it must be determined which idea was uppermost or controlling in his mind.

Id. So, key in this case is the designation "children," which is defined as "*lawful* blood descendants." (Emphasis supplied.) The majority then leaps to the conclusion that by using the term "lawful," Buffington meant for only Hood and Folger to share in his estate, and to exclude Todd, clearly as his "unlawful" issue. However, our precedent does not require this Court to interpret the ambiguous language "lawful blood descendants" to mean exclusively in-wedlock children. That is why the majority relies upon cases from foreign jurisdictions to reach its pivotal ruling that the term "lawful" equates to "legitimate," for the purpose of disinheriting Todd. Such ruling not only works a possible injustice in this case, but has an effect significantly more far-reaching; by so holding, this Court not only crafts a term of legal art that will control the construction of untold wills and the distribution of estates, perhaps contrary to the intentions of the testators, but takes a giant step backwards in the development of the law in regard to the rights of biological children born without the benefit of marriage. Simply, it is unwise for this Court to hold, as a matter of law, that a child born outside of marriage is to be deemed "unlawful" for the purposes of inheritance under a will which contains the above definition of "children." Even the foreign authority cited by the majority questions the wisdom of

doing so. For example, in *Carey v. Jaynes*, 265 SW3d 801 (Ky. App. 2008), the Kentucky court construed the phrase "lawful blood descendants" to exclude an illegitimate child because Kentucky law had traditionally held the word "lawful" in that context to mean "legitimate or born of a lawful marriage." However, in so doing, the Kentucky court acknowledged the obvious conflict between such holding and the "evolution in constitutional law and statutory changes with respect to recognizing the rights of illegitimate descendants." Id. at 804. This Court should not be quick to follow the example of issuing a holding so at odds with the evolving law regarding the rights of children born out of wedlock. The current probate code permits a child born out of wedlock to inherit from his or her father if the child presents "other clear and convincing evidence that the child is the child of the father." OCGA § 53-2-3 (2) (A) (v). Even though it appears that this case does not present a question of intestacy, the laws governing the construction of wills cannot be made in a vacuum, but rather with the full recognition of the laws of intestacy which, of necessity, are examined and modified by the General Assembly in order to keep pace with societal needs and realities.

Simply, this Court should not usurp either the broad province of the General Assembly in expressing the public policy of this State or the narrow role of the factfinder in this case. Unfortunately, the opinion of the majority does both.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED MAY 17, 2010.

*Caldwell & Watson, Wade H. Watson III, Laura K. Bonander, Hulsey, Oliver & Mahar, Samuel L. Oliver, Thomas D. Calkins*, for appellant.

*Cook, Noell, Tolley, Bates & Michael, J. Vincent Cook, Jay W. Cook, Robert C. Irwin III*, for appellee.

