Boggs, Judge.
Alan Seago brought this action against the estate of Berry Earle III for injuries he sustained in a four-wheeler accident. The trial court granted summary judgment in favor of Earle’s estate, and Seago appeals. Because the evidence, construed in Seago’s favor, shows that he had equal knowledge of the hazard that caused his injury but failed to exercise reasonable care for his own safety, we affirm.
An owner or occupier of land must exercise ordinary care to keep his premises safe for invitees. OCGA § 51-3-1; American Multi-Cinema v. Brown, 285 Ga. 442, 447 (3) (679 SE2d 25) (2009). To show negligence in a premises liability case,
a plaintiff must show that (1) the premises owner had actual or constructive knowledge of the hazard; and (2) the plaintiff *700 lacked knowledge of the hazard, despite her exercise of ordinary care, due to actions or conditions within the owner’s control. However, the plaintiff’s evidentiary burden concerning the second prong is not shouldered until the owner establishes that the plaintiff was negligent, that is, she intentionally and unreasonably exposed herself to a hazard of which she knew or, in the exercise of reasonable care, should have known existed. With respect to the second prong, we determine whether the record shows plainly, palpably, and without dispute that plaintiff had knowledge of the hazard equal or superior to that of defendants or would have had equal or superior knowledge had the plaintiff exercised ordinary care for personal safety.
(Citation and punctuation omitted.) LeCroy v. Bragg, 319 Ga. App. 884, 885 (1) (739 SE2d 1) (2013). See Robinson v. Kroger Co., 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).
On appeal from the denial of summary judgment the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.
(Citation and punctuation omitted.) Hood v. Todd, 287 Ga. 164, 165 (695 SE2d 31) (2010); see OCGA § 9-11-56 (c).
So viewed, the record shows that Seago and Earle’s adjoining neighbor were hired to install a fence along the road frontage of Earle’s property. The adjoining properties’ driveways run approximately parallel on either side of a wooded area. The tools for the work were stored in a shop at the rear of the neighbor’s property, and Seago used the neighbor’s driveway to go back and forth to obtain tools as needed and to put them away at the end of his work.
Seago worked for approximately two weeks installing the fence. On the afternoon of July 30, 2010, he was riding a four-wheeler through the wooded area between the two driveways searching for some missing tools. He collided with a chain installed between two trees on Earle’s property and was seriously injured.
In his deposition, Seago acknowledged that on his first day on the job he saw the chain “up at one time” blocking access to a drive or lane on Earle’s property. He acknowledged that he could see if the chain was up or down from that driveway as he drove back and forth in the course of his work. In his deposition, Seago repeatedly testified that *701 on the day of his injury he did not look for the chain but “just assumed it was down,” because he had observed that the chain had been down since he began work, including the morning of his injury. Asked if it was correct that “he has seen the chain up before, and he has seen it down,” he agreed, “That’s right.”[1]
This awareness of the existence of the hazard bars Seago’s recovery. While he testified that he had not seen the chain installed across the road for approximately two weeks, he was aware of its existence and could see it well enough from a distance to observe whether it was up or down during the course of the two-week period. In Spires v. Hall, 230 Ga. App. 357, 358-359 (1) (496 SE2d 501) (1998), we held that the injured rider of four-wheeler had knowledge of a gate, having passed through it “a few years earlier.” Therefore, “we cannot escape the fact that [Seago] unquestionably knew about the obstruction and that this knowledge foreclosed his recovery as a matter of law. [Cit.]” Id.
Seago testified that the chain was in “a shaded area” and that it was about 5:30 on a July afternoon when he collided with it. He acknowledged that the area was not part of his ordinary work area: “We didn’t use that area. That just wasn’t our area to use.” He did not have permission from either landowner to go onto that part of the property.[2] Since he testified that he was “weaving in and out of the wooded area in between the spot it happened” looking for lost tools in an unfamiliar, shady location, he should have been proceeding slowly while scanning the ground.[3]
Instead, he was driving the four-wheeler at a speed of between 35 and 40 miles per hour, and still accelerating, when he came out of the wooded area into the lane. He entered the lane at a 45 degree angle through a narrow opening in a “thicket” that “looked like [he] could get the four-wheeler down through” to get onto the lane and immediately collided with the chain. He acknowledged that while he was not sure if he was wearing his contact lenses at the time, “with or without the contacts in, if I had had them in or if I had had them out, *702 I’d still — the chain just came up from nowhere, I came out of the wooded area so fast.” (Emphasis supplied.) He added, “if I was just heading straight to it, I’m sure I would have seen it, but me coming out of the area where I was coming out of, there was no time to see it.” (Emphasis supplied.) Whether the chain was marked is therefore irrelevant, because Seago acknowledged that he could see it from the neighbor’s driveway, but he could not have seen it at the speed and the angle he entered the lane. While Seago did not see the chain at the time of the collision, that was the result of his own conduct.
In sum, Seago was driving at high speed through an unfamiliar area, while distracted by looking for tools, and took a shortcut through a narrow opening which he admits was obscured by bushes to enter the lane at a sharp angle. He therefore had departed from any usual route of travel and had a heightened duty of care for his own safety.
The reasonable selection of a route of travel is a part of the invitee’s duty to exercise ordinary care for [his] own safety. While an invitee need not necessarily choose the safest course across the owner/occupier’s property, where an invitee voluntarily departs from the route designated and maintained by the owner/occupier for the invitee’s safety and convenience, the degree of caution required by the invitee’s duty to exercise ordinary care for [his] own safety is heightened by any increased risk resulting from that choice.
(Citation omitted.) Gaydos v. Grupe Real Estate Investors, 211 Ga. App. 811, 813 (440 SE2d 545) (1994).
Seago’s knowledge of the hazard was equal or superior to that of Earle, and he failed to exercise ordinary care for his personal safety. Accordingly, the trial court did not err in granting summary judgment.

Judgment affirmed.

Ellington, R J., Dillard and Branch, JJ., concur. Doyle, P. J., concurs in judgment only. Barnes, P. J., and Miller, J., dissent.

 Earle died in an unrelated motorcycle accident before this action was filed, and he was not deposed. Whether the chain was replaced by him or with his knowledge before the injury is therefore unknown.

 While this testimony appears to raise an issue as to whether Seago lost his status as an invitee and became a mere licensee by going beyond that part of the premises to which he was invited, Armstrong v. Sundance Entertainment, 179 Ga. App. 635, 635-636 (347 SE2d 292) (1986), Seago testified that he was instructed to “lock the gate and put the tools up” after work, and he believed that other individuals who were helping to build the fence may have left some missing tools in the area.

 Seago also acknowledged that he “turned [his] head looking for stuff at the same time [he] was traveling.”