302 Ga. 270
FINAL COPY

S17A0782.  PICCIONE et al. v.  ARP et al.

HINES, Chief Justice.

Gregory and Adam Piccione ("the Picciones"), grandchildren of testator Virginia Arp ("Virginia") and children of Donna Piccione ("Donna"), appeal from the superior court's denial of their motion for summary judgment in this action against their three uncles,  Sam and Dwayne Arp, individually and in their capacities as executors of Virginia's estate, and David Arp.  For the reasons that follow, we affirm.

Virginia executed a will in 2002.  It provides for her burial and the payment of her debts, and the sole paragraph that sets forth the disposition of her property states in toto:  "I give, bequeath and devise unto my children, Sam Arp, Donna Piccione, David Arp and Dwayne Arp, all of the property that I may own at the time of my death, both real and personal, of every kind and description and wherever located, PER CAPITA." (Emphasis in original.)

Donna died in 2006, and Virginia died in 2013. The executors of Virginia's estate divided it among Virginia's three surviving children (i.e., themselves and David). The Picciones, contending that they had a combined one-fourth interest in the property that comprised Virginia's estate, sued in superior court, asserting actions for conversion, fraud, and trespass regarding those property interests,[1] and moved for summary judgment, which the trial court denied, concluding that Virginia's use of the words "PER CAPITA" was a "limitation" under the anti-lapse statute, OCGA § 53-4-64 (a);[2] the anti-lapse provisions of the statute therefore did not apply to the gifts to Virginia's children; as Donna predeceased Virginia, the testamentary gift to Donna lapsed; and thus, the Picciones had no

---

[1] The final order of the superior court states that the will "was probated without objection in the Probate Court of Polk County, Georgia." No order or other part of the record of the probate court is included in the record of the superior court case.

[2] OCGA § 53-4-64 reads:
> (a) If a beneficiary is dead when the will is executed or otherwise dies before the testator, but has any descendants living at the death of the testator, the testamentary gift, if absolute and without remainder or limitation, shall not lapse but shall vest in the descendants of the beneficiary in the same proportions as if inherited directly from the deceased beneficiary under the intestacy laws of this state.
> (b) The provisions of subsection (a) of this Code section shall also apply to a testamentary gift to a class unless there appears a clear intent to the contrary.
> (c) If a beneficiary is treated as having predeceased the testator due to a divorce or annulment, as provided in Code Section 53-4-49, or due to the beneficiary being responsible for the death of the testator, as provided in Code Section 53-1-5, the provisions of subsection (a) of this Code section shall apply only to vest the testamentary gift in descendants of the beneficiary who are also descendants of the testator.

2

property interest upon which to base their claims. The trial court issued a certificate of immediate review, and this Court granted the Picciones' application for interlocutory appeal. See OCGA § 5-6-34 (b).

The trial court was correct that Donna's predeceasing Virginia constituted a lapse. "A lapsed legacy or devise is one, unrevoked by the testator, which was good at the time the will was made but which fails to take effect because of the death without issue or other incapacity of the beneficiary in the lifetime of the testator." 1 Sarajane Love, Redfearn, Wills and Administration in Georgia, § 156 (5th ed. 1988). See also *Collier v. Citizens & Southern Nat. Bank*, 206 Ga. 857, 858-859 (2) (59 SE2d 385) (1950).

> At common law, and under the law of this State before the act of 1836 ([former] Code, § 113-812), if the legatee died before the death of the testator the legacy lapsed, whether the legatee left issue or not. [Since 1836], if there be issue, it takes as substituting legatee [under the provisions of the anti-lapse statute]. [Cit.]

*Sanders v. First Nat. Bank*, 189 Ga. 450, 453 (1) (6 SE2d 294) (1939). The purpose of the anti-lapse statute is to "obviate the effect of lapse by carrying out what the legislature has presumed the testator's intent would have been as to the

3

disposition of the [testamentary] gift had [the testator] foreseen the possibility that the taker named in the will would die during the [testator's] lifetime." Verner F. Chaffin, Studies in the Georgia Law of Decedents' Estates and Future Interests, p. 212 (1978). See also *Robinson v. Ray*, 254 Ga. 237, 238 (1) (327 SE2d 721) (1985). When first enacted, Georgia's anti-lapse statute was not as it is now, and notably it did not apply to class gifts until it was set forth in the Revised Probate Code of 1998, which enacted OCGA § 53-4-64 in its current form; the anti-lapse statute now applies to testamentary gifts to both individuals and classes, albeit with differing language regarding the types of gifts. See 1 Mary F. Radford, Redfearn, Wills and Administration in Georgia, § 8:5 (n. 5) (6th ed. 2000) ("Prior to the enactment of the Revised Probate Code of 1998, case law would have directed a different result — that is, that the lapsed gift would be shared among the other members of the class of the testator's children rather than pass to the deceased child's descendants. [Cits.]"); 1 Sarajane Love, supra.

The trial court was correct in determining that the bequests in Virginia's will constituted individual gifts to her four named children, and thus was governed by OCGA § 53-4-63 (a).

4

> In determining whether a devise is to individuals or to a class, while it is true that a designation of the beneficiaries by names is not always and in itself conclusive, it is an earmark strongly indicative that the devise is to the named individuals as such; and unless a contrary intent of the testator can be gathered from the entire instrument, such individual designation will control.

*Snellings v. Downer*, 193 Ga. 340, 341 (2) (b) (18 SE2d 531) (1942).

> If a gift is made to beneficiaries by name, prima facie the gift is not one to a class, but to the beneficiaries as individuals, even though the persons named may possess some quality in common; and if no contrary intention appears from the context or other parts of the instrument, the beneficiaries will take as individuals, and not as a class.

Id. at 345 (2) (b). No contrary intention indicating a class gift appears in Virginia's will. Thus, as these are individual gifts, the question is whether the statement that her named children take "PER CAPITA" includes a requirement that each child survive her in order for that child to receive the bequest, inasmuch as a requirement that the taker of a testamentary gift survive the testator is a "limitation" under OCGA § 53-4-63 (a). See *Graham v. Patton*, 231 Ga. 391, 393-395 (1) (202 SE2d 58) (1973); *Powell v. Watkins*, 221 Ga. 851, 852 (148 SE2d 303) (1966).

> Of course,

> [t]he primary objective in will interpretation is to ascertain the

testator's intent. See OCGA § 53-4-55; *Hood v. Todd*, 287 Ga. 164, 166 (695 SE2d 31) (2010). To discover that intent, "[t]he court must look first to the 'four corners' of the will," and "[w]here the language of a will is clear . . . and can be given legal effect as it stands, the court will not, by construction, give the will a different effect." *Hood*, 287 Ga. at 166 (citations and punctuation omitted).

*Stewart v. Ray*, 289 Ga. 679, 680 (2) (715 SE2d 679) (2011). And,

> [i]n the construction of a will, the courts should look to that interpretation which carries out the provisions of the statute of distribution, rather than that which defeats them; that, in the absence of anything in the will to the contrary, the presumption is that the ancestor intended that her property should go where the law [of intestacy] carries it, which is supposed to be the channel of natural descent. To interrupt or disturb this descent or direct it in a different course, should require plain words to that effect.

*Fleming v. First Union Nat. Bank*, 274 Ga. 527, 529 (555 SE2d 728) (2001) (Citations and punctuation omitted.) Georgia's statutory scheme governing intestacy provides that the heirs "in the first degree" of one who dies without a will, and who is not survived by a spouse, shall be the children of the decedent, "with the descendants of any deceased child taking, per stirpes, the share that child would have taken if in life." OCGA § 53-2-1 (c) (3).[3] See also *In re Will*

---

[3] OCGA § 53-2-1 reads in pertinent part:

. . .

(c) Except as provided in subsection (d) of this Code section, when a decedent died without a will, the following rules shall determine such decedent's heirs:

(1) Upon the death of an individual who is survived by a spouse but not by any child or other descendant, the spouse is the sole heir. If the

*of Lewis*, 263 Ga. 349, 351 (1) (434 SE2d 472) (1993) ("In the absence of anything in the will indicating a contrary intent . . . it will be presumed that the testator intended a per stirpes distribution as would occur by law in the event of intestacy."). Thus, there must be "plain language in [Virginia's] will to

decedent is also survived by any child or other descendant, the spouse shall share equally with the children, with the descendants of any deceased child taking that child's share, per stirpes; provided, however, that the spouse's portion shall not be less than a one-third share;

(2) If the decedent is not survived by a spouse, the heirs shall be those relatives, as provided in this Code section, who are in the nearest degree to the decedent in which there is any survivor;

(3) Children of the decedent are in the first degree, and those who survive the decedent shall share the estate equally, with the descendants of any deceased child taking, per stirpes, the share that child would have taken if in life;

(4) Parents of the decedent are in the second degree, and those who survive the decedent shall share the estate equally;

(5) Siblings of the decedent are in the third degree, and those who survive the decedent shall share the estate equally, with the descendants of any deceased sibling taking, per stirpes, the share that sibling would have taken if in life; provided, however, that, subject to the provisions of paragraph (1) of subsection (f) of Code Section 53-1-20, if no sibling survives the decedent, the nieces and nephews who survive the decedent shall take the estate in equal shares, with the descendants of any deceased niece or nephew taking, per stirpes, the share that niece or nephew would have taken if in life;

(6) Grandparents of the decedent are in the fourth degree, and those who survive the decedent shall share the estate equally;

(7) Uncles and aunts of the decedent are in the fifth degree, and those who survive the decedent shall share the estate equally, with the children of any deceased uncle or aunt taking, per stirpes, the share that uncle or aunt would have taken if in life; provided, however, that, subject to the provisions of paragraph (1) of subsection (f) of Code Section 53-1-20, if no uncle or aunt of the decedent survives the decedent, the first cousins who survive the decedent shall share the estate equally; and

(8) The more remote degrees of kinship shall be determined by counting the number of steps in the chain from the relative to the closest common ancestor of the relative and decedent and the number of steps in the chain from the common ancestor to the decedent. The sum of the steps in the two chains shall be the degree of kinship, and the surviving relatives with the lowest sum shall be in the nearest degree and shall share the estate equally.

. . .

7

overcome the presumption that she intended a per stirpes distribution as would occur by law in the event of intestacy." *Fleming*, supra at 529. Here, there is such language.

As the trial court noted, Virginia wrote the will with the words "PER CAPITA" in all capital letters; no other substantive portion of the will was so emphasized.[4] "Per capita" is Latin for "by the head," and is stated in Black's Law Dictionary (7th ed. 1999) to mean "[d]ivided equally among all individuals, [usually] in the same class." By contrast, "per stirpes" which is also from Latin, means "by roots or stocks," and is defined as "[p]roportionally divided between beneficiaries according to their *deceased ancestor's* share." Black's Law Dictionary (7th ed. 1999) (Emphasis supplied.) As our precedent has stated,

> "*[p]er capita*" is defined: "By the heads or polls; according to the number of individuals; share and share alike." 48 C. J. 807, § 2. "When descendants take as individuals, and not by right of representation, . . . they are said to take *per capita*." Bouvier's Law Dictionary. (Italics ours.)

*MacGregor v. Roux*, 198 Ga. 520, 522 (1) (32 SE2d 289) (1944). By contrast,

> "[w]hen issue are said to take *per stirpes* it is meant that the

_____

[4] Other than headings and "PER CAPITA," the only words in the will that are displayed in all capital letters are the testator's name, and those which appear in the phrase, "IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal . . . ."

> descendants of a deceased person take the property to which he was entitled or would have been entitled if living. *Rotmanskey v. Heiss*, 86 Md. 633 (39 Atl. 415)" 32 Words & Phrases (Perm. ed.), p. 459. "By or according to stock or root; by right of representation." Bouvier's Law Dictionary; 48 C. J. 808, § 2.

Id. at 521-522. Further,

> [t]he terms "per capita" and "per stirpes" have a definite meaning in law and are presumed always to be used in their technical sense unless a contrary intention appears in the context of the will. "Per capita" means "by the head" or share and share alike, according to the number of individuals. "Per stirpes" means "by the roots" or "stocks," or by representation. It denotes that method of distribution where a class or group of individuals or distributees take the share which their "stock" (deceased ancestor) would have been able to take in per capita distribution. The technical meaning of these words may be changed or even reversed by the manner in which the testator uses them in the will, as the testator's intention always controls.

1 Mary F. Radford, *supra* at § 7:9 (Citations omitted.) As noted, in Virginia's will the only individuals named as recipients of the testamentary gifts are her four children; they alone take as individuals, and if their children took the gifts in their stead, it would be by representation.

The Picciones contend that in the will, "per capita" simply means "equally," i.e., that the bequests to the four named children were to be in equal amounts, and thus, as the legacy to Donna would ordinarily be considered to

9

have lapsed, the anti-lapse provision of OCGA § 53-4-64 (a) requires that the testamentary gift to Donna does not lapse, but rather vests in them as Donna's descendants. Certainly, if Virginia had used the term "equally," that would be the case; the gift to Donna would be considered to have lapsed, and under OCGA § 53-4-64 (a), the Picciones would have taken her gift by representation. And, of course, if Virginia had designated the gifts for her named children "per stirpes," the Picciones would also receive the bequest made to Donna, although not by operation of OCGA § 53-4-64 (a), but by the specifics of the gift itself, as the descendants of a primary legatee. See *Stewart*, supra. But, Virginia did not use either of those terms; she stated that her testamentary gifts to her children were to be "PER CAPITA," and that language must be given effect. *Fleming*, supra at 528.

The plain language of the will indicates that Virginia *did not* intend that her bequests follow the law of intestacy, and the presumption in favor of a per stirpes distribution is thus overcome. <u>Fleming</u>, supra at 528. The choice of "PER CAPITA" in this circumstance imposes a requirement that the individuals named take the bequests in their own stead, that those bequests not pass through representation, and accordingly, that the named individuals must survive

Virginia.  Thus, there is a limitation within the meaning of OCGA § 53-4-64 (a),

and that Code section does not apply.

Accordingly, the trial court did not err in denying the Picciones' motion

for summary judgment.

Judgment affirmed.  All the Justices concur.

Decided October 16, 2017.

Estate administration. Polk Superior Court. Before Judge Lim.

Gammon, Anderson & McFall, W. Wright Gammon, Jr., for appellants.

Vickey R. Atkins; J. Steven Astin, for appellees.