**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**August 23, 2022**

# In the Court of Appeals of Georgia

A22A1060. JOHN v. BATTLE STATION, LLC.

PHIPPS, Senior Appellate Judge.

Monica John sued Battle Station, LLC, for negligence, seeking damages for injuries she sustained when she tripped and fell in a parking lot owned by Battle Station. John now appeals from the trial court's order granting Battle Station's motion for summary judgment, contending that the trial court erred when it concluded that: (i) the hazard on which she tripped was an open and obvious static condition; (ii) she was charged with equal or superior knowledge of the hazard; and (iii) her departure from the designated path of travel barred recovery. For the reasons that follow, we agree and reverse the trial court's judgment.[1]

---

[1] This is the second appearance of this case in this Court. In *John v. Battle Station*, 361 Ga. App. XXVII (Case No. A21A1747) (Oct. 13, 2021) (unpublished), we reversed the trial court's order granting Battle Station's motion to dismiss John's

Viewed in the light most favorable to John, the nonmovant, see *Henry v. Griffin Chrysler Dodge Jeep Ram*, 362 Ga. App. 459, 460 (868 SE2d 827) (2022), the record shows that, in December 2017, while walking through a shopping center parking lot owned by Battle Station between 7:00 p.m. and 8:00 p.m., John fell after she tripped on a six-to-eight-inch section of rebar protruding at an angle from the parking lot surface. As a result of the fall, she suffered injuries to her head, nose, face, neck, jaw, knee, and shoulder.

John sued Battle Station for negligence, seeking damages for the injuries she sustained in her fall. Following discovery, Battle Station moved for summary judgment, contending that: (i) the hazard was an open and obvious static defect; (ii) John's knowledge of the hazard was equal or superior to Battle Station's because she had traversed the same path earlier in the evening; and (iii) John assumed the risk of the hazardous condition when she "voluntarily departed from the normal pedestrian route provided for her safety and convenience by deviating from the aisle of the . . .

---

appeal to the extent that the court did so on the ground that the appeal was untimely, vacated the order to the extent that it was based on the court's finding that John caused an unreasonable and inexcusable delay in the filing of the transcript, and remanded the case for further proceedings. On remand, the trial court denied Battle Station's motion to dismiss John's appeal, and the case again was transmitted to this Court.

parking lot to take a short cut between parking spaces and parked vehicles." The trial court agreed on all three grounds and granted Battle Station's motion. This appeal followed.

"We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant." *Henry*, 362 Ga. App. at 460.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the movant meets this burden, the nonmovant cannot rest on [her] pleadings, but rather must point to specific evidence giving rise to a triable issue.

Id. at 460-461 (citations and punctuation omitted); see OCGA § 9-11-56 (c), (e).

1. John contends that the trial court erred when it ruled that the protruding rebar was an open and obvious static condition. We agree.

The question of whether a static condition was open and obvious implicates the duty and breach elements of a negligence claim. See *Goldstein, Garber & Salama, LLC v. J. B.*, 300 Ga. 840, 841 (1) (797 SE2d 87) (2017) (to state a cause of action for

3

negligence in Georgia, "a plaintiff must show four elements: a duty, a breach of that duty, causation and damages") (citation and punctuation omitted); accord *Wilcher v. Redding Swainsboro Ford Lincoln Mercury*, 321 Ga. App. 563, 565-566 (1) (743 SE2d 27) (2013). In that vein,

> [u]nder OCGA § 51-3-1, a person who owns or occupies land and by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. In order to recover on a premises liability claim, a plaintiff must show (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. . . . In other words, a plaintiff is not entitled to recovery if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant.

*D'Elia v. Phillips Edison & Co.*, 354 Ga. App. 696, 698 (839 SE2d 721) (2020) (citation and punctuation omitted). Where a claim involves a static condition, i.e., "one that does not change and is dangerous only if someone fails to see it and walks into it," a proprietor "may safely assume that [an] invitee will see it and will realize any associated risks" if "nothing obstructs the invitee's ability to see the static

4

condition."[2] Id. at 698-699 (citations and punctuation omitted). Thus, even if a defendant-proprietor had knowledge of an alleged hazard, a plaintiff-invitee cannot recover if the hazard was "open and obvious." Id. at 699.

Here, the trial court concluded that John's "own testimony" established that the hazard was an open and obvious static condition. However, pretermitting whether the protruding rebar may be deemed a static condition, the court did not identify any testimony provided by John during her deposition supporting a conclusion that the hazard was open and obvious, and our review of her testimony likewise reveals no such statements. And while Battle Station contends that the rebar was open and obvious because it "was exposed and protruding from the concrete . . . approximately six to eight inches," other record evidence supports a contrary conclusion. In particular, a manager of a store in the shopping center testified in a deposition that, in the minutes following John's fall, it was "very dark" outside, and the area "was not very lit." The manager further testified that the dark-colored rebar "blended in with the concrete" so that she could not see it without using a flashlight. And a flash

---

[2] It is undisputed that John was an invitee of Battle Station at the time of the incident underlying this appeal. See, e.g., *Barton v. City of Rome*, 271 Ga. App. 858, 860 (610 SE2d 566) (2005) ("Pursuant to OCGA § 51-3-1, owners or occupiers of land owe a statutory duty to their customers, as invitees, to exercise ordinary care to keep the premises and approaches reasonably safe . . . .").

5

photograph taken by the manager supports her testimony that the rebar was difficult to see. Consequently, the trial court erred when it implicitly determined that no issues of material fact exist as to whether the hazard was open and obvious, and we reverse its ruling to that effect.

2. John further contends that the trial court erred when it ruled that she was charged with equal or superior knowledge of the hazard because "she had previously traversed the area where the defect was located." We agree.

As a general rule, "[w]hen a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom." *Anderson v. Reynolds*, 232 Ga. App. 868, 870 (502 SE2d 782) (1998) (citation and punctuation omitted). "In cases where this rule has been applied, however, the defect causing the fall invariably has been a static condition readily discernible to a person exercising reasonable care for his own safety, a factual circumstance not necessarily present in this case." *Martin v. Dunwoody-Shallowford Partners*, 217 Ga. App. 559, 561 (2) (b) (458 SE2d 388) (1995).

John testified in her deposition that she had visited the shopping center approximately ten times before her accident and had never before seen metal

6

protruding from the parking lot. On the night in question, she tripped and fell on her way back to her vehicle after visiting a grocery store in the shopping center. In that regard, the following exchange ensued in her deposition:

Q. When you went into the store, did you take the same route in as you did —

A. Yes.

Q. — when you were exiting?

A. Yes, yes.

. . .

Q. Okay. So you took about the same path into the Kroger to do your shopping as you did when you were exiting the Kroger?

A. Yes.

Q. Okay. On your way in, did you notice any metal pole sticking out of the ground?

A. No.

Viewing the above testimony in the light most favorable to John, see *Henry*, 362 Ga. App. at 460, a reasonable juror would be entitled to find that she did not precisely retrace her exact path, step by step, from earlier in the evening when she returned to her vehicle. Moreover, given the evidence discussed in Division 1, above,

a reasonable juror also could find that the difficult-to-see rebar would not have been visible even if John's earlier path of travel had taken her right next to it. Similarly, her prior visits to the shopping center, standing alone, do not establish as a matter of law that she previously should have seen the rebar, especially absent record evidence as to how long the hazard had existed. Consequently, the trial court also erred when it implicitly determined that no issues of material fact exist as to whether John had (or should have had) prior knowledge of the hazard, and we similarly reverse its ruling in that regard.[3]

3. Finally, John contends that the trial court erred when it ruled that she assumed the risk of hazards in the parking lot when she voluntarily departed "from the route designated and maintained by" Battle Station for walking between the parking lot and the grocery store. Once again, we agree.

> The reasonable selection of a route of travel is a part of the invitee's duty to exercise ordinary care for [her] own safety. While an invitee need not necessarily choose the safest course across the owner/occupier's property, where an invitee voluntarily departs from the route designated and maintained by the owner/occupier for the invitee's safety and convenience, the degree of caution required by the invitee's

---

[3] The trial court did not address — and we therefore express no opinion on — whether any record evidence exists as to Battle Station's knowledge of the hazard.

duty to exercise ordinary care for [her] own safety is heightened by any increased risk resulting from that choice.

*Seago v. Estate of Earle*, 331 Ga. App. 699, 702 (771 SE2d 397) (2015) (citation and punctuation omitted).

Notably, the trial court identified no record evidence of a designated route for pedestrians walking to or from the shopping center's parking lot. Nevertheless, Battle Station maintains that John's path of travel — which, it claims, took her "between rows upon rows of parked cars" — was a "less-safe path" and a "perilous route." But like the trial court, it also identifies no record evidence — either in its appellate brief or in its motion for summary judgment — showing either that Battle Station maintained a designated pedestrian route or that John's path of travel in fact was "less-safe" or "perilous" as a matter of law.[4] Consequently, the trial court again erred when it implicitly determined that no issues of material fact exist as to whether John assumed the risk of hazards in the parking lot by voluntarily departing from a

---

[4] Battle Station's suggestion that John voluntarily chose a less-safe path "by deviating from the aisle of the . . . parking lot to take a short cut between parking spaces and parked vehicles" assumes that which it seeks to establish — i.e., that the path taken by John was more dangerous than walking down the "aisle" of the parking lot — without identifying any record evidence to that effect.

designated path of travel, and we therefore reverse the trial court's ruling in that regard.

*Judgment reversed. Doyle, P. J., and Reese, J., concur.*