**THIRD DIVISION**
**RICKMAN, C. J.,**
**DOYLE, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**January 24, 2023**

# In the Court of Appeals of Georgia

A22A1650. BUCHANAN v. HANNON.

PHIPPS, Senior Appellate Judge.

This case involves the interpretation of a will; specifically, whether the decedent intended to bequeath his entire residence to his daughter, or to divide it between his daughter and his niece. Finding an irreconcilable conflict between two different provisions in the bequest, the trial court granted summary judgment in favor of the niece. For reasons that follow, we reject the trial court's interpretation, and we reverse and remand with direction for the entry of summary judgment in favor of the daughter.

The record shows the following undisputed facts. In 2017, Gloster L. Buchanan executed a last will and testament. Gloster's wife, Celia Buchanan, was then alive, as were his only child, Carol Ramona Buchanan, and three grandchildren. Gloster also

had a niece, Samille Hannon. In Item XVIII of the will, Gloster bequeathed his residence as follows:

> **Specific Devise of Homeplace.** [1] I give and devise to **CELIA M. BUCHANAN**, if she shall survive me, any interest which I own at the time of my death in the house and lot which I occupy as my residence at the time of my death. [2] If she shall not survive me, then I give and bequeath said property to **CAROL RAMONA BUCHANAN**, provided she survives me. .[sic] [3] If she shall not survive me, then I give, devise and bequeath all the property to **CAROL RAMONA BUCHANAN and SAMILLE HANNON**, provided they survive me. [4] If my said daughter or niece fail to survive me, but have living lineal descendants who survive them, such descendants shall take per stirpes the share their parent would have taken had she survived me[.][1]

Celia died in March 2019, and Gloster died in June 2019. Later that year, Carol, who is the executor of Gloster's estate, probated her father's will.

In January 2021, Hannon filed this declaratory judgment action against Carol, in her capacity as executor, alleging that Item XVIII in Gloster's will gave "conflicting directions regarding the distribution of [his] homeplace" and requesting guidance from the court as to the construction of the will. The parties filed cross-

---

[1] The bracketed material does not appear in the original will.

2

motions for summary judgment. In her motion, Hannon argued that the second and third sentences of Item XVIII of the will are so inconsistent that both cannot be given effect, and therefore the third sentence — dividing the interest in the home between Carol and Hannon — should control. Carol, on the other hand, argued that Item XVIII is merely ambiguous and that parol evidence shows that Gloster's intent was for her to inherit the home if Celia was no longer living. Following a hearing, the trial court granted Hannon's motion and denied Carol's, ruling that the sentences in question create an irreconcilable conflict that, under principles of will construction, must be resolved by giving effect only to the later sentence. Carol appeals.

"The construction of a will is a question of law, which we review de novo." *Luke v. Luke*, 356 Ga. App. 271, 272 (2) (846 SE2d 216) (2020) (citation and punctuation omitted). "The cardinal rule in construing the provisions of a will is to determine the intent of the testator." *Smith v. Ashford*, 298 Ga. 390, 393 (1) (782 SE2d 251) (2016) (citing OCGA § 53-4-55). "The court must look first to the 'four corners' of the will to discover that intent." *Hood v. Todd*, 287 Ga. 164, 166 (695 SE2d 31) (2010) (citation and punctuation omitted). "Equally important, the entire document is to be taken together, and operation should be given to every part of it." *Luke*, 356 Ga. App. at 272 (2) (citation and punctuation omitted).

3

"[W]hen the meaning of the words used in the will is so plain and obvious that it cannot be misunderstood[,]" then "the plain and unambiguous terms . . . must control." *Smith*, 298 Ga. 393 (1) (citations and punctuation omitted). If the will is ambiguous, however, the court may "apply the rules of construction and consider parol evidence of circumstances surrounding the testator at the time of execution of the will in order to ascertain the testator's intent." Id.

> Ambiguity is defined as duplicity, indistinctness, an uncertainty of meaning or expression used in a written instrument, and it also signifies doubtful or uncertain nature; wanting clearness or definiteness; difficult to comprehend or distinguish; of doubtful purport; open to various interpretations.

*Investment Properties Co. v. Watson*, 278 Ga. App. 81, 83 (1) (628 SE2d 155) (2006) (citation and punctuation omitted).

Carol contends that the provisions of Item XVIII of Gloster's will are patently ambiguous in that they "first purport to devise the Home to [her], and then to [her] and [Hannon] jointly. The Testator's intent is unclear based on these two sentences taken together." Accordingly, Carol argues, the trial court should have considered parol evidence to determine Gloster's intent. In that vein, Carol submitted affidavits

4

from herself and Gloster's lawyer averring that Gloster intended to bequeath the residence solely to Carol.

Hannon, however, argues that the second and third sentences in Item XVIII are in direct conflict and cannot be reconciled, so the third sentence governs. She cites the principle that where there are inconsistent provisions in the same will, the later provision prevails. See *Donehoo v. Donehoo*, 229 Ga. 627, 629 (2) (193 SE2d 827) (1972); *Jordan v. Middleton*, 220 Ga. 903, 906 (1) (142 SE2d 806) (1965). Although this principle was once codified in a statute, it is now considered a common law guideline. See Comment to OCGA § 53-4-56 (noting that "[f]ormer OCGA Sec[]. 53-2-92 (dealing with the construction of inconsistent provisions) . . . [is] repealed[,]" but the repeal of this "rule[] of construction as [a] statutory mandate[] does not prohibit a court's use of [it] as [a] common law guideline[] in the construction of wills"). Importantly, "before a subsequent provision will be held to prevail over a prior provision, the two must be so inconsistent and irreconcilable that both cannot stand." *Chamblee v. Guy*, 218 Ga. 56, 59 (3) (126 SE2d 205) (1962). For example, in *Chamblee*, the Supreme Court found an irreconcilable conflict in a will that purported to devise the same property in fee simple absolute, and also as a life estate. Id. at 59-60 (3).

5

Hannon explains the conflict in Gloster's will as follows:

> Here, neither the second nor the third sentences of Item XVIII are ambiguous. The second sentence provides that: '[i]f [Celia Buchanan] shall not survive me, then I give, devise and bequeath said property to CAROL RAMONA BUCHANAN, provided she survives me.' The third sentence states: '[i]f [Celia Buchanan] shall not survive me, then I give, devise and bequeath all the property to CAROL RAMONA BUCHANAN and SAMILLE HANNON, provided they survive me.' The second sentence plainly devises the residence solely to Ms. Buchanan; the third sentence plainly devises a one-half interest to each beneficiary.

(Brackets in original of Hannon's appellate brief.)[2]

Thus, Hannon interprets both sentences as explaining what happens if Celia predeceases Gloster, with the second sentence devising the property solely to Carol in that event, and the third sentence devising the property to Carol and Hannon equally. These different bequests cannot both occur, Hannon argues, so the later provision controls. Hannon thus contends that parol evidence is unnecessary, though she submitted her own affidavits stating that Gloster meant to devise the residence to Carol and her equally. The trial court agreed with Hannon's interpretation of the will,

---

[2] In both places where Hannon has written "Celia Buchanan" in brackets, the will contains the word "she."

ruling that "the second and third sentences are not ambiguous, but contradictory devises that cannot be reconciled."

The finding of an irreconcilable conflict in Gloster's will depends on the antecedent of the pronoun "she" in the second and third sentences of Item XVIII. That is, to whom does "she" refer? As noted, Hannon (and presumably the trial court) determined that the first "she" in *both* sentences refers to Celia, and that *both* sentences therefore govern what happens if Celia dies before Gloster. If so, then there is indeed an unresolvable clash, as Gloster could not simultaneously devise the property — in the event Celia predeceased him — to Carol, alone, and to Carol and Hannon equally.

But the two sentences can also be read in a different way:

[2] If she [Celia Buchanan] shall not survive me, then I give and bequeath said property to **CAROL RAMONA BUCHANAN**, provided she survives me. .[sic] [3] If she [Carol Ramona Buchanan] shall not survive me, then I give, devise and bequeath all the property to **CAROL RAMONA BUCHANAN and SAMILLE HANNON**, provided they survive me.

(Bracketed material added.) In this interpretation, the first "she" in the second sentence refers to Celia; but the first "she" in the third sentence refers to *Carol*, not

7

Celia, such that the third sentence comes into play only if Carol predeceases Gloster. We conclude that this is the most reasonable interpretation of Item XVIII for several reasons.

First, it is the grammatically preferable construction. The first "she" in the third sentence must refer to Carol because Carol is the female identified by name immediately before that pronoun. Second, this interpretation gives effect to both the second and third sentences: the second sentence sets forth what happens if Celia fails to survive Gloster (Carol inherits), and the third sentence explains what happens if Carol also fails to survive Gloster (Carol and Hannon inherit). See *Luke*, 356 Ga. App. at 272 (2) ("operation should be given to every part of [the will]"). The trial court's finding of irreconcilable provisions, by contrast, effectively excises the second sentence from the will. Third, this interpretation honors the principle that, in construing a will,

> courts should look to that interpretation which carries out the provisions of the statute of distribution, rather than that which defeats them; that, in the absence of anything in the will to the contrary, the presumption is that the ancestor intended that h[is] property should go where the law of intestacy carries it, which is supposed to be the channel of natural descent. To interrupt or disturb this descent or direct it in a different course, should require plain words to that effect.

8

*Piccione v. Arp*, 302 Ga. 270, 273 (806 SE2d 589) (2017) (citation and punctuation omitted). If Gloster had died intestate, then Carol, as his sole surviving child, would inherit the property. See OCGA § 53-2-1 (c) (2)-(3). In the absence of plain language indicating that Gloster intended to deviate from the "channel of natural descent," *Piccione*, 302 Ga. at 273, the second sentence should be read as a bequest to Carol.

Granted, this interpretation arguably renders the third sentence problematic, as it would require Carol to inherit one-half of the property if she were no longer living. But Carol survived Gloster, so the second sentence of Item XVIII controls, Carol alone inherits the property, and Hannon has no claim to it under the will. Because the event that would have triggered application of the third sentence — Carol predeceasing Gloster — did not occur, we need not resolve any ambiguity that may exist within that sentence on the specific facts of this case. See generally *McParland v. McParland*, 233 Ga. 458, 458-459 (211 SE2d 748) (1975) (court pretermitted "other ambiguities and conflicts in the language used in drafting the will" that did not affect the present dispute). Put another way, under the circumstances presented here, resolution of any ambiguity within the third sentence — through the use of parol

9

evidence or otherwise — would not affect the outcome and would, instead, be a pointless exercise.[3]

For these reasons, the will should be construed as providing that Gloster's child inherits the property if his wife predeceases him and his child survives him. The trial court erred by granting Hannon's motion for summary judgment and denying Carol's. Therefore, we reverse the judgment of the trial court and remand the case with direction that the trial court enter summary judgment in favor of Carol.

*Judgment reversed and case remanded with direction. Rickman, C. J., and Doyle, P. J., concur.*

---

[3] Just as this Court does not render advisory opinions, see *Huff v. Harpagon Co.*, 286 Ga. 809, 810-811 (2) (692 SE2d 336) (2010), we will not remand to the trial court for the determination of advisory facts.